Commonwealth of Pennsylvania *v.* The Joseph Kohnle Brewing Company, Appellant.

*Liquor law—Revocation of license—Act of* 1891.

Upon cause shown or proof made that a violation of law has been committed by the holder of a license it becomes the duty of the court under the act of June 9, 1891, P. L. 257, after notice given to the person so licensed, to revoke said license.

*Brewers' license—Brewery must be at place designated.*

A brewers' license does not authorize the licensee to have his brewery at a place not mentioned in his petition or license, and to deliver beer to customers from such brewery, upon orders received at, and transmitted from, the place for which his license was granted.

The changes affected by the acts of 1887 and 1891 are, that a person desiring to conduct the business of a brewer, that is to manufacture beer for sale, and to sell the beer thus manufactured by him, must apply to the court for a license and must set forth in his application the particular place for which a license is desired. The license which issues to him authorizes him to conduct the business only at the place designated.

*Liquor law—Revocation of license—Jurisdiction of appellate court.*

In matters involving the revocation of a license the appellate jurisdiction of the Superior Court is the same as, and no greater than, that exercised by the Supreme Court upon certiorari prior to the act of May 9, 1889, P. L. 158.

Argued April 20, 1896. Appeal, No. 60, Nov. T., 1896, by defendant, from decree of Q. S. Phila. Co., March T., 1896, revoking a brewers' license. Before RICE, P. J., WILLARD, WICKHAM, REEDER and ORLADY, JJ. Affirmed.

628        COM. v. BREWING CO., Appellant.

Statement of Facts—Opinion of Court below. [1 Super. Ct.

Rule to show cause why the license of The Joseph Kohnle Brewing Co. should not be revoked.

On May 14, 1895, a brewers' license was granted to the Joseph Kohnle Brewing Company for No. 1723, Buttonwood street, Fifteenth ward, city of Philadelphia, for one year, beginning June 1, 1895; a wholesale dealer's license was not applied for or granted to them. The licensee subsequently manufactured and sold beer at 2209 N. 15th street, for which place they had been refused a license.

The court revoked the license, HARE, P. J., filing the following opinion:

In the month of March, 1895, the Kohnle Brewing Company, who are the respondents in the above case, applied for a renewal of their license for No. 1723 Buttonwood street, where they were then in business as brewers, and also for a license for the manufacture and sale of beer at 2209 North Fifteenth street. The latter application was refused, the former granted; but the respondents soon after removed their brewery to 2209 North Fifteenth street, keeping an office open in Buttonwood street for the receipt of orders from their customers which were subsequently transmitted to Fifteenth street and there carried into effect by the delivery of the beer. In thus brewing in Fifteenth street under cover of a license for Buttonwood street, and selling the beer so produced in the latter street without a wholesale license, the respondents to common apprehension disregarded the orders of the court and the provisions of the act of June 9, 1891, which require not only that every brewery shall have a brewers' license, and that beer shall not be made except in the place named in the application, but that dealers in intoxicating drink shall obtain an annual license for each separate store, brewery, distillery, or agency. The respondents nevertheless contend that the case should be decided in the light of the constitutional requirement that " No act shall contain more than one subject, which shall be clearly expressed in the title," and since the title in question speaks only of the regulation and restraint of sales, the clauses which might otherwise render a license necessary for the manufacture of liquor should be left out of view without prejudice to the rest.

This conclusion seems to me altogether unsound, and would,

if adopted, invalidate the entire statute, because the intention
that beer shall not be manufactured without a license is inter-
woven with the intention that it shall not be sold without a
license, and neither can be without doing violence to both.
Viewed from the defendants' standpoint, the liquor laws are
open to another and formidable objection. In requiring dealers
to pay a large sum annually for the privilege of carrying on
their business the legislature virtually imposed a tax that would
be appropriate in a bill for the increase of the revenue, but may
be thought less relevant to the regulation of sales than the re-
quirement that breweries must have a license in rendering
the clauses with which it is associated unconstitutional.

Whether the case is one where unconstitutional provisions
can be disregarded and the remainder administered need not,
however, be considered further, because the enacting clauses
are throughout consistent with the title, and contain no clause
foreign to the purpose declared at the outset. The argument
that making is not selling would have more force had the legis-
lature directed how beer should be brewed and with what in-
gredients, but is inapplicable to a case like the present, where
the subject-matter is manufacturing for sale, and the direction
is that brewing shall not be carried on without a license. Con-
ceding, for the sake of argument, that brewing for home con-
sumption would not fall within the line of title, the license
which the respondents held is in terms to brew for sale, and yet
they maintain that it cannot be regulated under an act for the
restraint and regulation of sales.

The title of an act is the name given to facilitate reference
and guard against the passage of laws under false pretenses
and without notice to the persons whose interests are involved,
and it should set forth the purpose which the legislature has
in view, and not the means by which the legislative will is
to be carried into effect. Defining who may sell and on what
conditions is a common and efficient method of regulating sales.
Dealers in intoxicating drink are accordingly ranged by the
liquor laws of this state under the two general heads of retail
and wholesale, the latter class being subdivided into those who
buy to sell again and those who manufacture what they vend,
including brewers, distillers, compounders, and rectifiers. Each
of these must have a license, which, however, does not confer

630  COM. *v.* BREWING CO., Appellant.

Opinion of Court below—Arguments. [1 Super. Ct.

like powers upon all. A brewer's license necessarily implies the authority to sell, without which the privilege would be valueless ; but it will not entitle him to deal in beer made by others, or in any place except that for which he applied, while on the other hand a license to sell wholesale does not confer the right to brew. This classification does not transcend the title, and is, on the contrary, calculated to promote the purpose there set forth. If manufacturers were allowed to supplement their products with liquor derived from other sources and establish separate agencies, they would undersell dealers who, having no such advantages, are forced to buy from them, and might control the market.

There is another point which, in my opinion, would be conclusive, even if the rest of the case were in the respondents" favor. The receipt of an order for merchandise of a certain kind or quality does not constitute a sale. It is not until the goods are set apart or delivered that the title passes and the vendor becomes entitled to the price. The allegation that sales were made exclusively at the office in Buttonwood street is not, therefore, borne out by the evidence, which shows that they resulted from transactions begun there by the acceptance of orders left by customers, and were perfected in Fifteenth street by the measuring out and delivery of the beer. The business of a brewer consists in a series of acts commencing with the purchase and malting of the barley and ending in the sale of the product and collection of the price. It is therefore in effect one whole, and should not be split up into parts with a view to evading the requirement of the act of June 9, 1891 :

" That all dealers in intoxicating drinks shall obtain and pay for an annual license for each separate store, brewery, and distillery, compounding establishment, or agency where their business is carried on." If the respondents desired that the beer which they made in one locality should be sold through an agency elsewhere, they should have supplemented their brewers' with a wholesale license. See Lutz's License, 1 Dist. Reports, page 306; Johnson's License, 13 Pa. C. C. Rep. 584.

*Error assigned* was revoking the license.

*Theodore F. Jenkins*, with him *John C. Grady*, for appellant.

—The act of June 5, 1891, P. L. 257, only refers to sales of liquor, it does not attempt to regulate the manufacturer. The title of an act is a part of it: Railroad Co. v. Riblet, 66 Pa. 166 ; Eby's Appeal, 70 Pa. 311. The judgment of the court below should be reversed: Com. v. Carey, 151 Pa. 368 ; Com. v. Heckler, 168 Pa. 575.

*Lewis D. Vail*, for appellee.—The act of 1891 provides for different kinds of wholesale licenses. Prior acts also provided for different kinds of licenses : Brewers' and Distillers' Licenses, 5 C. C. 136 ; Washington County Licenses, 6 C. C. 377. The act of 1891 provides that those engaged in distilling or brewing business shall not be debarred from obtaining a wholesale dealers' license, but may be granted only one license to sell by the wholesale at a place separate from the brewery : Lutz's License, 1 D. R. 306.

By the act of April 10, 1849, P. L. 576, distillers and brewers obtained their licenses from the county treasurer. Judge McIlvaine, in 5 C. C. R. 136, says in his opinion, delivered April 24, 1888, that this act was then in force. In Knarr's Petition, 127 Pa. 554, the Supreme Court on October 29, 1889, decided that in all the counties of the state except Philadelphia and Allegheny the power to grant or refuse distillers' or brewers' licenses was conferred on the court of quarter sessions by the acts of March 31, 1856, P. L. 200; April 20, 1858, P. L. 365; March 22, 1867, P. L. 40. Then by the act of June 9, 1891, P. L. 257, a general law was enacted for the whole state, differing only in some details from the prior acts.

Thus it will be seen that at no time since 1849 could a brewer carry on his business without a license, even if he merely manufactured the beer at a particular place. A license to brew necessarily gives the power of sale at the brewery. If the brewer cannot sell his manufactured product he would not wish to carry on the business.

Objections as to the constitutionality of these acts on these grounds have been taken and overruled by the Supreme Court: Com. v. Sellers, 130 Pa. 32; Com. v. Silverman, 138 Pa. 642, and many other cases.

OPINION BY RICE, P. J., May 11, 1896:

The act of June 9, 1891 (P. L. 257), provides, inter alia, that,

" upon sufficient cause being shown or proof being made to the said court that the party holding a license has violated any law of this commonwealth relating to the sale of liquors, the court of quarter sessions shall upon notice being given to the person so licensed, revoke said license." In 1895 the appellant applied for, and was granted a " brewers license," setting forth in the petition therefor that " the particular place for which a license is desired is, No. 1721 and 1723 Buttonwood St., in the 15th ward of the city of Philadelphia." The accompanying bond recited the fact that the company had filed its petition " to manufacture and brew malt liquors at 1723 Buttonwood street." After due notice and hearing, the court revoked the appellant's license, setting forth upon the record the grounds of its action in the following order : " And now, March 31, 1896, it appearing to the court that the Kohnle Brewing Co., manufactured beer, and delivered the same to their customers at 2209 N. Fifteenth street without a license, and also that they established an agency for the sale of the beer so made at 1723 Buttonwood street, and transmitted the orders for the beer there received to 2209 N. Fifteenth street, without a wholesale license, the above rule is made absolute, and their license to manufacture and sell beer at Buttonwood street is revoked."

The appellate jurisdiction of this court in such a case is the same as, and no greater than, that exercised by the Supreme Court upon certiorari prior to the act of May 9, 1889 (P. L. 158) : Colwyn v. Tarbotton, 1 Pa. Superior Ct. 179. As defined in Dolan's Appeal, 108 Pa. 564, it is restricted to what appears upon the face of the record proper. If manifest error does not there appear, the order complained of must be affirmed. But if there is anything on the face of the record to show affirmatively that the court acted arbitrarily, and without cause, or that the cause shown was wholly insufficient, it would exhibit such an abuse of discretion, as would demand a reversal of the order.

The question fairly raised upon this record is whether a brewers' license authorizes the licensee to have his brewery at a place not mentioned in his petition or license, and to deliver beer to customers from such brewery, upon orders received at, and transmitted from, the place for which his license

was granted. The contention of the appellant is that the act of 1891 does not attempt to regulate the manufacture of liquors, but only their sale, and hence the holder of a brewer's license may brew beer at any place, and in any quantities, and so long as he does not sell the beer no statute of the commonwealth would be violated; but that the business of selling beer so manufactured can be conducted only under a license and at the place licensed. This seems plausible, but when applied to the present case the argument amounts to this: The appellant's license is to sell beer at 1723 Buttonwood street, and so long as the orders of its customers are received and accepted, the accounts kept and payments made at that place, it makes no difference where the beer is manufactured, set apart and delivered. Following the argument out to its logical conclusion, the licensee can do what is said to have been done here, open and operate a brewery for the manufacture of beer for sale at a place for which license was refused, provided he keeps an office for the direction of the business at the place for which license was granted. We are unable to approve this construction of the act of 1891. The business of a brewer includes the manufacture and sale of beer, and certainly since 1849, if not before, the state has licensed and taxed this business. By the 31st sec. of the act of April 10, 1849 (P. L. 576), the appraisers of mercantile taxes were required to make annual returns to the county treasurer of the number of distilleries and breweries within their respective counties, specifying the name of the owner or proprietor of each, and the number of gallons distilled, brewed, etc., per annum. They were taxed according to their annual sales. Section 33 made it an indictable offense "to carry on any such distillery or brewery without a license." By the license law of March 31, 1856 (P. L. 200), the tax was doubled, and section 34 made it a misdemeanor for any person engaged in the sale or manufacture of liquor to employ or permit any intemperate person to assist in such manufacture or sale. The rates were again changed by the act of April 20, 1858 (P. L. 365), but both acts speak of the license as a brewery or distillery license, an entirely different thing and obtained in a different way from a wholesale license. But it was held in Britton v. Commonwealth, 105 Pa. 311, that a distiller of whisky who had paid the annual county tax for a distiller's

license, might sell the whisky manufactured by him in quantities not less than one gallon at any one place within the county, other than at his distillery. The reasons which led the court to this conclusion, at least so far as they applied to the case of a brewer, were clearly stated by Justice CLARK, and we may profitably quote from his opinion to show the changes that have been made by the act of 1891. " The license of a distiller under the provisions of the several acts of assembly referred to appears to confer a privilege to be exercised within the proper county. He is appraised, taxed and licensed, in the same manner as a vender of merchandise, upon the return of the mercantile appraiser, and the license thus obtained secures the privilege not only to manufacture, but to sell the product; there is no requirement expressed in the statute that this sale shall be conducted at the precise place of manufacture. The applicant for a distiller's license is not required, as a licensed retailer is, in an application to set forth the particular place in which his business is proposed to be conducted, or to designate the building with its adaptations to the particular purpose of the license. The business like that of a vender of merchandise is open to all who may choose to engage in it upon compliance with the law. There is nothing expressed in the statute, or in the form of license prescribed by law, or in the form of procedure to obtain it, which restricts the business to any particular place or to any subdivision of the county." The changes effected by the acts of 1887 and 1891 are, that a person desiring to conduct the business of a brewer, that is to manufacture beer for sale, and to sell the beer thus manufactured by him, must apply to the court for a license and must set forth in his application " the particular place for which a license is desired."

The advertisement which the clerk is required to publish must designate " the place for which application is made." The license which issues to him authorizes him to conduct the business of a brewer, as above defined, at the place designated in his petition. He may obtain the license, it is true, without proof " that the place to be licensed is necessary for the accommodation of the public "—Doberneck's Appeal, 1 Pa. Superior Ct. 99; Gemas' License 169 Pa. 43—but not without designating the place. The act of 1891 is not merely a taxing law, but

is, as its title indicates, an act " to restrain and regulate the sale
of vinous, spirituous, malt or brewed liquors, or any admixture
thereof by wholesale." Wholesale dealers, brewers, distillers,
etc., are required " to pay for each separate store, brewery, dis-
tillery, etc., an annual license." Strictly speaking, the license
is not granted to the place but to the person; and so far as
the law is a police measure, the purpose is, as the appellant's
counsel argues, to regulate the sale, and the penal provisions.
of the act of 1887 are directed against unlawful sales. But in
licensing brewers as a separate class of dealers, who, it is to be
remembered, may sell to consumers as well as to other dealers,
the law wisely provides that the owner must have a license
for each separate brewery. In a sense this is a regulation of
the manufacture of beer, because if the product cannot be sold
breweries will not be established. The act deals with the
manufacture of beer for sale, as a constituent part of the busi-
ness of a brewer, and an enactment requiring him to take out
a license for each separate brewery where beer is manufactured.
for sale and sold is fairly within the scope of the title of the
act. It is a legitimate method of regulating the sale by that
class of wholesale dealers to which brewers belong. We can
add nothing profitably to what the learned judge below has.
said upon this feature of the case. It is no answer to say that
the place where the business of a brewer is conducted is not
a matter of importance provided he sells only the product of
one brewery. Under the law the public have a right to know
the place where the business is to be conducted, and to be
heard in opposition to the granting of the license. Citizens
living in the vicinity of the place on N. Fifteenth street might
have no personal motives for objecting to the granting of a
license to a man to carry on the business of a brewer on But-
tonwood street, but would object if they knew that the brew-
ery was to be located in their vicinity. True they might not.
be heard to object that the place was not necessary, but, know-
ing the place, they might object upon other valid grounds.
The statutory provisions requiring the place to be designated.
would be of little if any value, if under a license for that place
that portion of the business in which the public is chiefly in-
terested and which the law was chiefly intended to regulate,
namely the manufacture and delivery of the beer to customers,

could be carried on at any place in the county that the licensee might select.

It would not be difficult nor out of place to show the mischievous consequences which would follow from such a construction of the law, but it is unnecessary. Under a fair construction of the law, with reference to the purpose of its enactment, as well as under the construction which the appellant put on it, in its application, this license was for its brewery at 1723 Buttonwood street. This was the place for which the license was asked and granted. The license conferred the privilege to sell the product of that brewery, not of any brewery, nor beer bought of other brewers or dealers. It had no license for its brewery on N. Fifteenth street. These were two distinct and separate breweries, not parts of a single plant. Surely it cannot be contended that the appellant could sell the product of both breweries under one license, and if it could not do that, it could not transfer the license from one to the other, at pleasure. It is not necessary in this case to say that the mere manufacture of beer at N. Fifteenth street was a penal offense, or that the appellant could not do that without a license. The facts stated in the decree are that beer was manufactured there for sale, and that the sales were consummated there by setting it apart, and delivering it to customers.

If the appellant had had no license, it could hardly be denied that although the orders for the beer were taken elsewhere, the unlawful act was consummated at the place where the beer was manufactured and delivered. We think it was none the less unlawful because the defendant ceased to manufacture beer at the place for which it obtained license.

We find no error in the record and the order is affirmed.

NOTE. A petition for a special allocatur was applied for to and refused by the Supreme Court on May 18, 1896.