## Appeals of Daniel Meenan, Henry Preis and John Carlin.

*Revocation of license—Appellate review.*

Where a license is revoked, after due notice and hearing, the action of the license court will not be reviewed on the merits by the appellate court because there is no way of bringing the evidence on the record.

*Revocation of license—Specification of cause therefor reviewed.*

Where the rule to show cause why license should not be revoked is based on an ex parte affidavit alleging that the licensee had violated the law, fairness and good practice require that the act alleged to be a violation of law be specified with reasonable certainty. Where this is done and the order of revocation specifies no other cause, the appellate court will look into the petition to determine whether or not the alleged act is a violation of law.

*Sale of liquor in excess of one quart—Retail license.*

A license to sell liquor in quantities not exceeding one quart at a time must be held to be no justification for a sale in greater quantities; such sale is a violation of the law, and justifies a revocation of a license.

Legislation on this subject reviewed.

Argued Oct. 6 and 12, 1899. Appeals, Nos. 105, 112 and 124, Oct. T., 1899, by John Carlin, by Henry Preis and by Daniel Meenan, from orders of Q. S. Phila. Co., revoking retail liquor licenses of John Carlin, Henry Preis and Daniel Meenan, respectively. Before RICE, P. J., BEAVER, ORLADY,

SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed. Opinion by RICE, P. J.

Petitions to revoke retail liquor licenses. Before WILTBANK and McCARTHY, JJ.

It appears from the record that petitions for rules to revoke retail liquor licenses in the above cases were duly filed, with affidavits and rules granted thereupon, to show cause why said licenses should not be revoked. On April 3, 1899, after hearing evidence and arguments upon rules to revoke, the court held the matter under advisement. On April 29 the rules to revoke the licenses were made absolute and licenses ordered to be revoked. Petitions for rehearing were subsequently filed and dismissed. John Carlin, Henry Preis and Daniel Meenan respectively appealed, and said appeals are considered and disposed of in the opinion of the court which follows.

*Error assigned* among others was in revoking the licenses to sell liquor at retail.

*John G. Johnson*, with him *Keator & Freeman*, for Daniel Meenan, appellant.—The only ground for the court's action in refusing a renewal of appellant's license was that he had sold beer at retail in quantities greater than a quart at a time, a ground upon which, so far as the reported cases disclose, and so far as we have been able to ascertain, no license was ever before revoked or refused.

The question then narrows itself down to this: Under the act of May 13, 1887, can a retailer sell malt or brewed liquors in quantities greater than a quart? Is the sale of brewed liquors in such quantities prohibited by the act?

Section 2 of the act provided that licenses to sell such liquor at retail in quantities, not exceeding one quart, shall only be granted to citizens of the United States of temperate habits and good moral character.

Is there anything in this section which expressly prohibits the sale of more than a quart of malt or brewed liquors at one time by a retailer? Can such a prohibition be raised by implication? But before we enter into a discussion of these questions, we must not lose sight of the rules of construction

governing statutes of this nature.   The act of May 13, 1887, is a penal statute, and being such it must, therefore, be strictly construed: Com. v. Reyburg, 122 Pa. 305.

It is the duty of all courts to confine themselves to the words of the legislature, nothing adding thereto, nothing diminishing: Everett v. Wells, 2 Scott, N. R. 531.

The license of a retail liquor dealer granted by the court of quarter sessions under the provisions of this act fixes no maximum amount to be sold.   It is to sell at retail.   Nor do any of the definitions of " retail " or " at retail " laid down in the standard dictionaries, both general or those adapted to purely legal phraseology, fix a " quart " as the dividing line between a retailer and a wholesaler or brewer.

Retail.—The sale of commodities in small quantities or parcels, or at second hand; dealing out in small portions, opposed to wholesale: Century Dictionary and Cyclopedia.

At retail.—To sell by small parcels and not in gross: Century Dictionary and Cyclopedia.

Retail.—To sell by small parcels and not in gross: Bouvier's Law Dictionary; Black's Law Dictionary; Com. v. Kimball, 48 Mass. 308.

*Maxwell Stevenson*, for John Carlin, appellant.

*Matthew Dittmann* and *Thomas R. Elcock*, for Henry Preis, appellant.

*Lewis D. Vail* and *D. C. Gibboney*, for appellee.

OPINION BY RICE, P. J., November 20, 1899 :

The 7th section of the Act of May 13, 1887, P. L. 108, provides, that " upon sufficient cause being shown or proof being made to the said court that the party holding a license has violated any law of this commonwealth relating to the sale of liquors, the court of quarter sessions shall, upon notice being given to the person so licensed, revoke the said license."   The conviction of the licensee is not a condition precedent to the exercise of this power: Campbell's License, 8 Pa. Superior Ct. 524.   It seems, also, that the court may issue a rule to show cause why a license should not be revoked, without requir-

ing the person applying for it to file an affidavit specifying the facts upon which the revocation is asked, Dolan's Appeal, 108 Pa. 564, or may enter the rule of its own motion upon information obtained in the trial of another case, Carlson's License, 127 Pa. 330; and if, in either case, the license is revoked, after due notice and hearing, the action of the court will not be reviewed by the appellate court.    That is to say, it will not be reviewed on the merits, because there is no way of bringing the evidence on the record.    " The agreement of counsel . . . . that the testimony may be omitted from the paper-book, and that the findings of fact as contained in the opinion of the court should be considered in lieu thereof, is nugatory, as we would have no right to consider the testimony if printed: " Carlson's License, supra.    A fortiori the evidence cannot be considered in the absence of an agreement to that effect.    But where the court sets forth in the decree itself the sole cause for which the license was revoked, and this is not sufficient in law to warrant its action, the decree will be reversed on appeal: Babb's License, 2 Pa. Superior Ct. 38; Com. v. Brewing Co., 1 Pa. Superior Ct. 627.    So, also, where the rule to show cause is based on an ex parte affidavit or petition, alleging that the licensee had violated the law, fairness and good practice require that the act alleged to be a violation of law be specified with reasonable certainty.    Where this is done and the order of revocation specifies no other cause therefor, we deem it allowable, indeed our duty, to look into the petition and to determine whether or not the alleged act was a violation of law.

The petitions upon which the rules to show cause were granted in these cases lack precision, but, fairly and reasonably construed, they charge that each of the several sales specified was in a greater quantity than one quart.    It was not absolutely essential that the persons to whom the sales were made should be specified by name.    That the appellant in No. 124, October term, 1899, understood that this was the charge he was called upon to meet is apparent from his petition for a rehearing, in which he says: " The petition on which said rule was granted averred as the only reason for revoking said license, that your petitioner violated the provisions of the liquor laws of this commonwealth in selling malt or brewed liquors in larger quantities than one quart at one time."    We may safely assume,

that each of the other appellants understood that this was the charge, and the only charge, against him, and proceed at once to the consideration of the question, whether a license to sell vinous, spirituous, malt or brewed liquors at "retail" as that term is defined in the act of 1887, authorizes the licensee to sell the same in quantities greater than a quart at a time?

A review of earlier legislation upon this subject will not be out of place. The 1st section of the act of 1710 provided that no person should keep any "public inn, tavern, alehouse, tippling house, dram shop, victualling house or public house of entertainment in any county of this province, . . . . unless such person or persons shall first be recommended by the justices in the respective county courts . . . . to the lieutenant governor for the time being, for his license for so doing, under the penalty of five pounds." The 4th section prescribed the fees to be paid for the licenses granted pursuant to the act, and these were rated according to the liquors to be sold: 1 Sm. L. 73; 2 Stat. at Large, chap. 172. We remark in passing that the license thus granted did not exempt the holder from the excise imposed on all retailers by the various acts subsequently passed for revenue purposes, by the provincial legislature. A reference to one of these numerous acts will be sufficient. See Act of January 19, 1734, 4 Stat. at Large, chap. 331, secs. 9, 10.

No mention was made in the act of 1710 of the quantity that the licensed keeper of a public house might sell at one time; nor, it seems, did the act provide adequately against the sale of "drams and strong liquors by small measures" by persons not licensed as keepers of public houses. To remedy this latter evil and others recited in the preamble, the Act of August 26, 1721, 1 Sm. L. 126; 3 Stat. at Large, chap. 244, provided, inter alia, that no persons "other than such who are qualified so to do by the above recited law" (act of 1710) "shall presume . . . . to retail or sell to any person or persons whatsoever, any rum, brandy or other spirits by less quantity or measure than one quart; nor any wine, by any less quantity than one gallon; nor any beer, ale or cider by any less quantity than two gallons." This act, while prohibiting others from selling in less quantity than a quart at a time, did not clearly prohibit the licensed keeper of a public house from selling in greater quantity, upon complying with the excise laws in that regard. The

same is true of the Act of March 19, 1783, 2 Sm. L. 65, the Act of January 27, 1819, 7 Sm. L. 145, the Act of April 7, 1830, P. L. 352, and the Revised Act of March 11, 1834, P. L. 117.

The provision of the last mentioned act reads as follows : " If any person shall sell less than one quart of spirituous or vinous liquors, to be delivered at one time, to one or more persons, without having first obtained a license agreeably to law for that purpose, such person shall be liable to indictment," etc. The license here referred to, which alone (after the repeal of the 12th section by the Act of March 29, 1841, P. L. 121) would authorize such sale, was a license to keep an inn or tavern to be granted in the mode prescribed in the preceding sections of the act, and to be granted only to persons " well provided with house room and conveniences for the accommodation of strangers and travellers." The license thus granted to an innkeeper or a tavern keeper carried with it the right to retail, by small measure, vinous and spirituous liquors, but did not expressly declare it unlawful for the licensee to sell in greater measure.

This exclusive privilege was said in Omit v. Com., 21 Pa. 426, to be " a monopoly in the most profitable branch of the trade in liquors " offered to induce persons to establish inns or places of refreshment for the accommodation of strangers and travelers, and to maintain the requisite arrangements and attendants. A monopoly, in effect, it certainly was, but whether the regulation was adopted with that end in view exclusively, or for the primary purpose of prohibiting the establishment and maintenance of mere drinking places is another question, not necessary to be discussed here.

The next legislation to be noticed is the Act of March 31, 1856, P. L. 200. This prohibited the keeping or maintaining any house, room or place where liquors were sold or drank except as therein provided. The licenses that might be granted under this act, were, first, to brewers and distillers, which authorized the sale of spirituous liquors in quantities not less than five gallons (changed by act of 1858 to one gallon), and malt or brewed liquors in quantities not less than one dozen bottles ; second, to venders, with or without other goods, etc., " in quantities not less than a gallon " (changed by act of 1858 to one quart) ; third " to keepers of hotels, inns and taverns selling in quantities less than a gallon ; " fourth, to keepers of

eating houses for the sale of malt and brewed liquors and domestic wines. In this act, as in preceding legislation, the license of the third class above mentioned is described as a license to keep a hotel, inn or tavern. It gave the rights and privileges immemorially exercised by innkeepers including the right to provide not only food but liquors according to the requirements of their guests. Up to this period the right to sell liquors in small quantities was treated, in the main, as incidental to the business thus licensed. At first glance, however, it would seem that there was a qualification or restriction in the act of 1856 of the quantity that the licensee might sell at one time, which did not so clearly appear in earlier legislation. On the other hand, the fact that the act expressly prohibited venders from selling in less quantity than a gallon at a time and did not expressly forbid tavern keepers from selling in greater quantity, whilst not conclusive of the question, tends to some degree, to support the theory that the words "selling in quantities less than a gallon" were permissive merely and not restrictive, and that no change in that regard in the policy of the state as shown by prior laws was intended.

The supplement to this act, approved April 20, 1858, P. L. 365, provided in its 13th section as follows : " That no person who keeps in his store or wareroom any hogsheads, stand casks or liquor pipes, or who keeps a grocery store, shall receive license to vend intoxicating liquor by less measure than one quart, . . . . and if any such person" (that is, having in his place of business any of the articles above named) " shall have a license to vend such liquors by less measure than one quart, the court may on investigation revoke the same ; but such person may, on complying with the laws on the subject, obtain license to sell by no less measure than one quart." This section, it is true, did not, in so many words, restrict the licensed innkeeper as to the quantity that he might sell at one time ; it does, however, show a very clear intent not to give innkeepers the exclusive privilege to sell in quantities less than a quart, and the right to carry on the business of a general vender of liquors as well. Another significant provision of this act is found in the 16th section, which reads : " That keepers of drinking saloons shall be licensed in the city of Philadelphia, to sell such liquors on the premises described in their license, as licensed keepers of

hotels may lawfully sell; and all keepers of licensed eating houses in said city, shall have the same privileges as to their sales." This section remained in force until the passage of the act of 1887 and will be referred to hereafter.

The local option law of March 27, 1872, P. L. 49, has no bearing on the present question and need not be noticed. But at the same session of the legislature the Act of April 3, 1872, P. L. 843, was passed for Allegheny county, repealing as to that county all laws excepting local prohibitory laws; directing the county treasurer to issue a license to any citizen of the United States of temperate habits and good moral character applying for the same and complying with certain specified conditions, and providing, inter alia, that "no wholesale dealer shall sell vinous, spirituous, malt or brewed liquors in less quantity than one quart, and no licensee who shall have received a license to keep a hotel, inn, tavern, drinking saloon or eating house shall sell or give away any other liquors than those permitted by this act, and those too only in quantities not greater than one quart." Under this act, as under the Philadelphia act, a person possessing the necessary qualifications and complying with the prescribed conditions might acquire the exclusive privilege theretofore accorded to licensed keepers of hotels, inns and taverns, to sell spirituous liquors in quantities less than a quart, without furnishing any other public accommodations whatsoever. But the legislature was careful to declare expressly that no person having this exclusive privilege, whether keeper of a tavern, or of an eating house, or of a drinking saloon, should be permitted to sell in greater quantities. The statutory provision above quoted also remained in force until the passage of the Act of May 13, 1887, P. L. 108.

Upon this review of earlier legislation several things will be observed which may aid, indirectly, in the interpretation of that act. First, the legislative policy, adopted very early in the history of Pennsylvania and, with slight interruption, consistently adhered to for many years, to give to licensed keepers of hotels, inns and taverns, having suitable accommodation for the entertainment of strangers and travelers, the exclusive privilege of selling spirituous liquors in quantities less than one quart had been abandoned in the two largest counties of

the state long before the passage of the act of 1887. Second, in other portions of the state the distinctions between a tavern license and a restaurant or eating house license, both as to the privileges granted and also as to the amount required to be paid therefor, were still in force; but outside the two counties above mentioned the licensing of drinking saloons was not legally recognized. Third, whatever may be the true construction of the prior general laws in this regard, the legislature had in express terms forbidden licensed retailers in Allegheny county to sell in greater quantities than a quart, a consideration which militates somewhat against the theory, that it had been the settled and uniform policy of the state not to restrict such dealers as to the measure by which they might sell. Fourth, in some portions of the state the courts of quarter sessions had substantially the same discretionary power to grant or refuse the license that they have now throughout the whole state; whilst in other sections the license was demandable as a matter of right upon compliance with certain statutory conditions and was issued by the clerk of the quarter sessions or by the county treasurer.

That there was occasion, if not imperative necessity, for a revision of the liquor license laws is apparent from this review, and, we may add, was generally conceded at the time. But this could only be accomplished by general laws. The agitation resulted in 1887 in the passage of two acts. The first of these was not a mere supplement to, or amendment of, prior laws, but is a complete revision of the law upon the subject and, so far as retail licenses were concerned, was intended to be applied " according to its own, clear and self-supporting provisions."

The purposes of the legislation, as expressed in the title of this act, were, first, to " restrain " the sale of intoxicating liquors, which it was supposed, the " high license " feature, the penal provisions, and the change in the mode of granting licenses in Philadelphia and Allegheny would have a tendency to accomplish; second, to " regulate " the sale by a general law, applicable in every part of the state, excepting where special prohibitory laws were in force, directing how and upon what conditions a license to " retail " any and all kinds of intoxicating liquors, whether, vinous, spirituous, malt or brewed might be obtained, vesting the power to issue such licenses, after a judicial inves-

tigation and upon the exercise of a sound discretion, in the courts of quarter sessions of each county, and clearly defining the privileges that such license conferred on the holder. Whilst the local laws of Philadelphia and Allegheny above referred to, so far as they related to retail licenses, were repealed and most of their distinctive features were wholly discarded, yet some of them were retained in the new law. The license issued under the act of 1887, unlike that issued under the act of 1834, and earlier as well as later laws, is not a license to keep an inn or tavern, (a public house of entertainment for all who choose to visit it, and which has some provision for the needs of a traveler upon his journey, namely, lodging as well as food), with the incidental right to sell intoxicating liquors in quantities less than a quart, but is a license to sell at retail. And, although in determining whether the license is necessary for the accommodation of the public and entertainment of strangers or travelers, the court may very properly receive and consider evidence as to the kind of place that is to be kept, whether hotel, eating house or saloon, yet the act does not make it an indispensable requisite that the place be adapted for the accommodation of the public in any other way than as a saloon. It is thus seen that the class of persons who may obtain license to sell vinous and spirituous liquors in small quantities was very much enlarged in Philadelphia by the act of 1858, in Allegheny county by the act of 1872, and throughout the whole state by the act of 1887. Having enlarged the class it is supposable that the legislature deemed it expedient to define more explicitly the privileges conferred by the retail license, and possibly to restrict them as to the quantity that might be sold at one time. This supposition is rendered more plausible by the fact that at the same session, the legislature provided for the issuing of licenses to sell in larger quantities than one quart: Act of May 24, 1887, P. L. 194. At all events, whatever the motive, the legislature used a form of expression, differing from that used in former general laws, which on its face is plainly restrictive and not merely permissive. They provided for the issuing of two kinds of licenses, one to wholesale dealers, and the other to retail dealers. The former, it is true, are prohibited expressly from selling in less quantities than a quart. But this express prohibition was necessary because the enacting clause

of the " wholesale " act did not otherwise define the meaning of the terms "wholesale dealer," nor specify affirmatively that he should be licensed to sell in any particular quantity. If the act had declared that a license might be granted to sell by wholesale in quantities not less than a quart, it could scarcely be contended that a clause expressly forbidding the licensee to sell in less quantities would have been needed. The latter form of expression was used in the retail act. Hence it was not necessary to say, in haec verba, no person licensed under this act shall sell in quantities exceeding a quart, because the act expressly and affirmatively defines what the license shall be. It is a license " for the sale of vinous, spirituous, malt or brewed liquors at retail in quantities not exceeding one quart." This was the kind of license the appellant applied for, as the prayer of his petition shows, and, presumably, it was the kind of license granted to him. It would be distorting the language of the act to hold, that a license to sell " in quantities not exceeding one quart " is a license to carry on the business of a general vender of liquors and to sell to the general public as well as to guests in any quantity, great or small. We find nothing in the context, in the history of former liquor license legislation, or in the subject of the present legislation, and the object to be attained, to warrant such construction.

In general, any sale of liquor without a license is unlawful. A license to sell in a particular place has been held not to be a defense to an indictment for selling without license where the sales were made at another place : Com. v. Holstine, 132 Pa. 357. See also Com. v. Munk, 1 Pa. Superior Ct. 479. So a license as a brewer has been held not a defense to a similar indictment where the licensee sold liquor, not of his own make, as the employee of an unlicensed person : Com. v. Zelt, 138 Pa. 615. In Com. v. Brewing Co., 1 Pa. Superior Ct. 627, an order of the quarter sessions of Philadelphia revoking a brewer's license for the reason that the licensee had manufactured and sold beer at a place other than that for which license was granted, was affirmed by this court. Upon the same principle, a license to sell in quantities not exceeding one quart at a time, must be held to be no justification for a sale in greater quantity. If the act is a violation of law, it is immaterial in this

proceeding whether it is punishable under the first or the second paragraph of section 15 of the statute.

There being no irregularity in the proceedings and it not appearing that the court has exceeded its jurisdiction or erred in its judgment in point of law, our duty is at an end and the order in each of the above cases must be affirmed. It is so ordered.