## Cox's License.

*Liquor laws—Peition for license for hotel—Averments of peti-
tion—Necessity—Refusal of license.*

It is reversible error for the Court of Quarter Sessions to refuse
a retail liquor license merely because the petitioner in his ap-
plication averred "that the place to be licensed is necessary for the
accommodation of the public, and is suitable as well as necessary
for the entertainment of strangers and travelers; that he has for
their exclusive use at least twelve bed rooms and fourteen beds,
and ample stabling accommodation for horses and vehicles," and
his certifiers testify that they signed the petition because of the
need of a hotel for the traveling public, and that they would not
have signed it if it had been merely an application to sell liquor.

Argued April 28, 1915.    Appeal, No. 3, March T.,
1916, by McClellan Cox, from order of C. P. Perry Co.,
Jan. T., 1915, No. 31, refusing liquor license. Before
RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEP-
HART and TREXLER, JJ.    Reversed.

Petition for retail liquor license.    Before SEIBERT,
P. J.

The petition which was endorsed, "Petition for tavern
license," was as follows:

This petition respectfully represents that your pe-
titioner is a citizen of the United States, of good moral
character and temperate habits, and desires to keep a
hotel, inn or tavern, and prays your honorable court to
grant him a license under the laws of the Commonwealth
to sell liquors in quantities not exceeding one quart.

Your petitioner further represents:

1st. That his name is McClellan Cox; his present resi-
dence is Blain Borough, Perry County, Pa., and he has
resided there for four years last past.

2d. The particular place for which license is desired
is the Hotel Dimm, a frame building situate in the
Borough of Blain, Perry County, Pennsylvania, on a lot

bounded on the north by an alley, on the east by an alley, on the south by lot of G. A. Garber, and on the west by Main street.

3d. That your petitioner was born in Greenwood Township, Juniata County, Pennsylvania, and is above the age of twenty-one years.

4th. The name of the owner of the premises where said business is to be conducted is Foster W. Dimm, of Blain, Perry County, Pa.

5th. That the place to be licensed is necessary for the accommodation of the public, and is suitable as well as necessary for the entertainment of strangers and travelers; that he has for their exclusive use at least twelve bed rooms and fourteen beds, and ample stabling accommodations for horses and vehicles.

6th. That your petitioner is not in any manner interested in the profits of the business conducted in any other place in said county, where any of said liquors are sold or kept for sale.

7th. That your petitioner is the only person in any manner pecuniarily interested in the business so asked to be licensed, and that no other person shall be in any manner peculiarly interested therein during the continuance of said license.

8th. Your petitioner has not had a license for the sale of liquor in this Commonwealth revoked during any portion of the year preceding this application.

9th. The names of the persons who will be his sureties on the bond, which is by law required, are F. W. Dimm and G. W. Shreffler, who are reputable freeholders of said County of Perry and State of Pennsylvania, where the said liquors are to be sold; and the said applicant further sets forth that each of the said sureties is a bona fide owner of real estate in the said county, worth, over and above all encumbrances, the sum of two thousand dollars, and that it would sell for that much at public sale, and that neither of said sureties is engaged

in the manufacture of vinous, spirituous, malt or brewed liquors.

(Signed McClellan Cox, Petitioner.

A number of the certifiers testified in substance as follows:

Fred Dolby: "I signed the application of Mr. Cox because they need a hotel for the traveling public; the only reason I can give for a liquor license is that they need it; can't keep a hotel without a license and therefore I signed it."

Wm. T. Dromgold: "I signed it because I thought it necessary to have a hotel; if it had been an application to sell liquor only I don't believe I would have signed it."

H. C. Dimm: "I signed the application because I thought it was necessary for the traveling public; to make up expenses you can't get from the table; you can't keep a hotel without a license and that is why I signed."

James F. Shannon: "License is for the general welfare of the town and the traveling public for eating and lodging, and if any one wants a drink he may get it. I would not have signed this if it had been for the license to sell liquor only. I do not think it would be necessary."

D. C. Dromgold: "I signed Cox's certificate because I thought a public house was necessary; a house to keep any one who comes and wants to stay. I do not know what the certificate sets forth. I signed for a public house. I would not have signed for a liquor license alone."

F. A. Kern: "I signed Cox's certificate because we need a public house. If asked to sign for a license to sell liquor only I would not have signed it."

George Johnson: "I signed Cox's application because I thought it necessary to have a public house to accommodate the public. I would not have signed for a place to sell liquor."

J. C. Gutshall: "I signed Cox's application because I

thought they would have no hotel in Blain if they would take this license away; that would help to support the hotel. I would not have signed for a license to sell liquor only."

F. A. Gutshall: "I signed Cox's application because numbers of the traveling people pass there every day and I know they would have to have a place to stop. The certificate did not say anything about a licensed house. I would not have signed an application for a license to sell liquor only."

Harry D. Stokes: "I signed Cox's application because I thought the license would help to keep the public house open. I believe I would sign a license for Cox to sell liquor only; a good many use liquor in Blain. A license to sell liquor in Blain is necessary in order to keep a public house open."

William Johnson: "I signed Cox's license because I thought we needed a licensed house on account of public travel. No need for license to sell liquor aside from the consideration of keeping open a public house. I would not have certified to the necessity for a license to sell liquor aside from the public house."

The court made an order refusing the license.

*Error assigned* was the order of the court.

*Luke Baker* and *Jas. M. Barnett,* of *Barnett & Son,* for appellant.

*Walter W. Rice* and *Geo. R. Barnett,* for appellees.

Opinion by Kephart, J., May 14, 1915:

The court below refused this license to sell liquor in quantities not exceeding one quart for two reasons. The first is considered in the opinion filed by President Judge Rice in the appeal of Howard A. Keim, filed this day, and the second may be stated in the language of the court below as follows: The electors who signed the appli-

cant's certificate attached to the petition "were dominated by the purpose of the repealed Acts of 1834 and 1856,—that the hotel, inn or tavern is the primary matter and the license to sell intoxicating liquors at retail an incident to it, and equally clear that the concept of the Act of 1887 has not been considered by them." If this reason, which influenced the court below in the exercise of its judicial discretion, was based on an erroneous conception of the law, this court will grant relief: Windber Brewing Company's App., 54 Pa. Superior Ct. 287.

In construing the Act of 1887, the petitioner was held to a very rigid rule not warranted by the act or the decisions of the appellate courts. We held in the Appeal of Meenan, et al., 11 Pa. Superior Ct. 579; Knoblauch's License, 28 Pa. Superior Ct. 324, and Reznor's Hotel License, 34 Pa. Superior Ct. 525, that under the Act of May 13, 1887, P. L. 108, it was not necessary to aver in the petition for license that the place to be licensed was necessary as a hotel, inn, or tavern, or that it had for the exclusive use of travelers at least four bedrooms and eight beds; and that when the applicant kept a hotel, inn or tavern within the requirements of the Acts of 1834 and 1856, he was not entitled, as a matter of law, to such license; and that a license, under the Act of 1887 was not a license to keep an inn or tavern but a license to sell at retail intoxicating liquors in quantities less than a quart. We have not held, nor does the Act of 1887 require us to hold, that the court below in determining whether the license is necessary "for the accommodation of the public and the entertainment of strangers or travelers," that it must look solely to the "necessity for the sale of liquor" apart from and independent of the adaptability of the place as a "public house of entertainment for all who choose to visit it and which has some provision for the needs of a traveler upon his journey, namely, lodging as well as food." That such consideration would be helpful to the court in the exercise of its discretion cannot be questioned. While the court may

limit its inquiry solely to this necessity for the sale of liquor, yet the act does not prohibit the petitioner and his certifiers from pressing on the court the necessity for hotel accommodations in the community, coupled with the privilege of selling intoxicating liquors as prayed for under the statute.

As stated in Reznor's Hotel Company's License, supra, "The court may very properly receive and consider evidence as to the kind of place that is to be kept, whether hotel, eating house or saloon......It may be conceded that proof that the applicant's place is necessary for the accommodation of the public and the entertainment of travelers goes very far to move in a proper way the discretion of the court and to warrant its inference that the license applied for is necessary." And as stated in Pollard's Petition, 127 Pa. 507, 521, "The whole theory upon which retailers are licensed, and it is the theory of the law, is that they are needed for the public accommodation and to provide places where strangers and travelers may rest and procure needed refreshment."

The Act of 1887 must not be construed so as to compel judicial injury to be directed solely to mere drinking places. If the court may, as an aid to the exercise of its judicial discretion, call to its assistance these facts, there is no good reason why they may not be incorporated as a part of the applicant's petition for license, nor should there be any objection to the certifiers to the petition, in passing on the truth of the matters contained in the petition, considering, among the reasons which may suggest themselves to their minds why the license to sell liquor should be granted, these facts set forth in the petition. Such consideration would not destroy the necessary jurisdictional facts averred in the petition, but would tend to sustain them. The profession and the bench have recognized for many years that the most efficient method of restraining and regulating the sale of liquor under the Act of 1887, is to require proof of necessity for a license to sell liquors as being

associated with the entertainment of the "traveling pub-
lic." While its consideration is not an indispensable
requisite, its averment in the petition and its consider-
ation by the certifiers will not invalidate the petition.
As we view it, the statements of the certifiers which are
set forth in the opinion filed by the court below, are not
inconsistent with the requirements of the Act of 1887.
Their statements are rather in affirmation of the facts
that the license is necessary for the accommodation of
the public. It is a persuasive reason why the privilege
to sell liquor should be granted. It does not place hotel
accommodations as of primary importance, but these
accommodations are made to depend on the granting of
the license without which the accommodations would not
exist. The license does not, therefore, become incidental
to the hotel, but the hotel is incidental to the license. A
petition is not necessarily defective, which includes
more than is required by the statute, unless it is plainly
misleading, which is not the case with this petition. The
appellant, when he filed his petition, relied on the good
faith and common, ordinary knowledge of those who cer-
tified to his application, and unless through fraud these
electors were misled and induced to sign the petition,
their secret motives or mental attitude with respect to
the sale of liquor should not be inquired into. It opens
up a very wide field.

For the reasons here given and those assigned in the
opinion of Judge RICE as above noted, this day filed, the
order of the court below is reversed and a procedendo
awarded.