# In The Matter of The Franklin Film Manufacturing Corporation.

*Motion pictures—Censorship—State Board of Censors—Abuse of discretion—Appeal to Common Pleas—Power of Common Pleas—Practice, Supreme Court.*

1. Under the Act of May 15, 1915, P. L. 534, Sec. 26, creating a State Board of Censors of motion pictures, "With a right of appeal from the decision of the board to the Court of Common Pleas of the proper county," the decision of the board of censors can be reversed by the Common Pleas only where there is a finding that the censors were guilty of an abuse of discretion.

2. On an appeal from the decree of the Court of Common Pleas reversing the decision of the State Board of Censors of motion pictures the Supreme Court will look at the opinion as well as the action of the lower court to see the basis on which it acted.

3. While the Court of Common Pleas may view eliminated pictures on an appeal from the State Board of Censors when necessary in order to properly comprehend the matter before them, such inspection should never be resorted to unless in the court's opinion the ordinary methods of proof are inadequate.

4. Where a Court of Common Pleas on the hearing of an appeal from the State Board of Censors of motion pictures found the action of the board to be "minute and far fetched" and "without merit," without finding the censors guilty of arbitrary or oppressive abuse of discretion, the order of the court reversing the decision of the censors that certain portions of a film be eliminated, was reversed.

5. Every order for an elimination made by the Board of Censors

necessarily comprehends a finding that the picture in question is "sacrilegious, obscene, indecent or immoral," and, as such, tends to "debase or corrupt morals"; and the Court of Common Pleas, under the Act of 1915, has ample power to protect property rights and to see that the public is not denied proper entertainment, where convinced, after hearing, that the censors have abused their discretion.

Argued March 24, 1916.  Appeal, No. 66, Jan. T., 1916, by the State Board of Censors, from decree of C. P. No. 2, Philadelphia Co., Sept. T., 1915, No. 4524, reversing decision of the State Board of Censors In The Matter of the Franklin Film Manufacturing Corporation.  Before BROWN, C. J., MESTREZAT, POTTER, MOSCHZISKER and FRAZER, JJ.  Reversed.

Appeal from order of the State Board of Censors.  Before BARRATT, P. J.

The facts appear by the opinion of the Supreme Court.

The lower court reversed the decision of the State Board of Censors directing the elimination of certain portions of a motion picture film.  The State Board of Censors appealed.

*Error assigned,* among others, was the decree of the court.

*Joseph L. Kun,* Deputy Attorney General, and *Francis Shunk Brown,* Attorney General, with them *Horace W. Davis,* Deputy Attorney General, for appellants.—On an appeal to the Court of Common Pleas from an order of approval or disapproval of a motion picture film ·by the board of censors, the review of the board is limited to determining whether or not its discretion has been exercised fairly and reasonably, or arbitrarily and oppressively.  An appellate tribunal has no authority to substitute its discretion for that of an executive officer of administrative board: Buffalo Branch, Mutual Film Corp., v. Breitinger, 250 Pa. 225;  Block v. Chicago, 239

Ill. 251 (87 N. E. Repr. 1011); Mutual Film Corp. of Mo. v. Hodges, 236 U. S. 248; Plymouth Coal Co. v. Com. of Penna., 232 U. S. 531; Mill Creek Coal Co. v. Curran, 244 Pa. 496.

*William A. Carr,* with him *W. Horace Hepburn* and *Sidney L. Krauss,* for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, April 17, 1916:

This case comes to us on certiorari from the Common Pleas of Philadelphia County, acting on an appeal from a decision of the Pennsylvania State Board of Censors. The board directed the elimination of certain portions of a film entitled "Virtue"; the court below reversed the censors, and they have appealed.

The Act of May 15, 1915, P. L. 534, (Sec. 3), creates a board to consist of three citizens, "well qualified by education and experience," to perform the duties of motion picture censors; it directs that, before assuming office, they shall take the oath prescribed by the Constitution; that they "shall examine or supervise the examination of all films, reels, or views to be exhibited or used in Pennsylvania......, and shall disapprove such as are sacrilegious, obscene, indecent, or immoral, or such as tend, in the judgment of the board, to debase or corrupt morals"; that they shall keep a record of all examinations and state therein the reason for any disapproval; finally, that, whenever an elimination is ordered, the persons submitting the film may demand an examination by a majority of the board of censors, "with the right of appeal from the decision of the board to the Court of Common Pleas of the proper county."

The phrase last quoted is all that is said upon the subject of appeal, and there is room for a fair difference of opinion concerning the power and authority intended to be conferred upon the Common Pleas by the act under consideration. The learned president judge of the court below evidently realized this, and so phrased his final de-

cree that the question should be squarely presented to us
for review.    The decree itself states that "the words
'right of appeal' from the decision of the Board of Cen-
sors to the Court of Common Pleas, under the Act......,
mean that the whole matter of the approval or disap-
proval of films or portions thereof is before the court de
novo, and the whole matter is to be examined and tried
as if it had not been tried before"; moreover, the court
certifies that, following the view just stated, "the films
complained of were thrown upon a screen and seen and
examined" by it, and, thereupon, it determined the ob-
jections of the censors to be "without merit." . There is
no finding, or even suggestion, that the censors acted ar-
bitrarily or were guilty of an abuse of discretion in order-
ing the eliminations in question, and the appellants con-
tend that, in the absence of such findings, the order of
the court below must be reversed.

Since there is nothing said in the Act of 1915, supra,
upon the subject of an appeal from the Common Pleas,
we are met at the threshold of this inquiry with the ques-
tion of our own jurisdiction.    It is well established, how-
ever, that when a new power is conferred upon a court
of nisi prius, to be exercised in a summary method or in
a way different from the common law, the right of re-
view by this court, on certiorari, follows as a matter of
course: Buckmyer v. Dubs, 5 Binney 28; Northampton
County Commissioners' App., 57 Pa. 452; In re Dia-
mond St., 196 Pa. 254.    It is further established that,
while on certiorari we cannot review the merits, yet "we
are entitled to inspect the whole record with regard to
the regularity and propriety of the proceedings to ascer-
tain whether the court below exceeded its jurisdiction
or its proper legal discretion: Robb's Nomination Cer-
tificate, 188 Pa. 212."    The above quotation is taken from
the opinion of Mr. Chief Justice MITCHELL in Independ-
ence Party Nomination, 208 Pa. 108, 111, where we
further said, "As a general rule the opinion of the court
is not part of the record, strictly so-called, and in com-

mon law actions the review on certiorari is confined to the judgment without reference to the reasons of the court in entering it. In equity suits the rule is the other way, and the reasons and opinion of the chancellor are always open to examination to discover the grounds of his action. Proceedings on summary petition like the present occupy a middle ground; they are not open to review on the merits......, but, as a mere inspection of the docket entries or the formal proceedings would disclose nothing, we must look at the opinion as well as the action of the court to see the basis on which it acted": see also Foy's Election, 228 Pa. 14. The principles just stated constitute our guide in this case.

At the present time, in our law, the word "appeal" has no conclusive meaning, for, since the Act of May 9, 1889, P. L. 158, a writ of error and a certiorari, as well as an appeal proper, are all designated "appeals" (Diamond St., supra); therefore, it is necessary in each instance to look at the particular act of assembly giving the right of appeal to determine just what powers are to be exercised by the appellate court. In this connection, a careful reading of the statute here in question convinces us it was never contemplated that the Courts of Common Pleas were to be constantly called upon to permit moving picture reels to be reproduced before them, and sit as supercensors thereof, in order to review the decisions of the administrative body created by the act. The evident intent was to grant a right of appeal to the Common Pleas so that tribunal could correct any arbitrary or oppressive orders which the board of censors might make, and nothing more; in other words, that the court might reverse the censors when the latter were guilty of an abuse of discretion. This is the ordinary rule to which, on appeal, even this court restricts itself in reviewing an exercise of discretion, particularly of administrative officials.

We do not mean to say that the Common Pleas may not view eliminated pictures, when necessary so to do in

order properly to comprehend the matter before them; but such inspection should never be resorted to unless, in their opinion, the ordinary methods of proof are inadequate. When, after hearing, the court is convinced in any case that the censors have abused their discretion, the construction just placed upon the Act of 1915, supra, leaves ample power in the Common Pleas to see that the public is not denied proper entertainment, and to protect property rights, a power which they should not hesitate to use when occasion requires.

It is now established beyond controversy that the legislature may create an administrative body with discretion and authority to determine facts (Buffalo Branch, Mutual Film Corporation, v. Breitinger, 250 Pa. 225, 234-43), and, under the Act of 1915, supra, every order for an elimination made by the board of censors necessarily comprehends a finding that the picture in question is "sacrilegious, obscene, indecent, or immoral," and, as such, tends to "debase or corrupt morals." Of course, on this appeal, we do not go back of the ultimate findings stated by the court below as immediately supporting the decree brought to us by the certiorari; but, as already pointed out, while that tribunal thought the action of the board "minute and far-fetched," and "without merit," yet it did not find the censors were guilty of an arbitrary or oppressive abuse of discretion, and, in the absence of such a determination, the order complained of cannot stand.

The several assignments of error are sustained, and the order is reversed.