## McCauley *v.* Imperial Woolen Company et al., Appellant.

*Workmen's compensation law—Jurisdiction—Practice—Referee —Board—Common Pleas—Appellate courts—Evidence—Hearsay— Circumstantial evidence—Sufficiency and competency—Presumption—Wool sorter—Scratch—Anthrax—Death—"Accident" — Occupational diseases—Assumption of risks—Appeals—Certiorari— Record—Act of June 2, 1915, P. L. 736.*

1. A compensation referee is an officer of the Workmen's Compensation Board, vested with defined duties and powers, and all records made by him belong to the files of that body, and, on appeal, are before it for review, within the limitations of the Workmen's Compensation Act of June 2, 1915, P. L. 736.

2. The Workmen's Compensation Act of 1915 contemplates and requires that, if, after inspection and consideration of the adjudication and evidence, the board does not sustain the referee's final decision, before the former may reverse on a question of fact, it must grant a hearing de novo, make investigation, and substitute its own findings of fact, and conclusions thereon, for such findings of the referee as are not adopted; but, when an appeal is based on an alleged error of law, the board must act solely upon the record of the referee, and must either sustain, reverse or modify the latter's final order.

3. Appeals to the board are taken under either Section 420 or Section 421 of the Workmen's Compensation Act, the first amounting to a writ of error and the second to a motion for a new trial, the new trial to be had before the board instead of the referee.

4. A finding of fact without any evidence at all is an error of law.

5. Where the ultimate finding of a referee is cast in the form of a mixed conclusion of fact and law, and the classification of an appeal is not made plain by the appellant, the board must exercise its discretion in determining the nature thereof.

6. Where the attack upon the finding of a referee is upon the ground that the testimony was insufficient in fact to justify the

referee's findings and not that there was no legal evidence whatever
to warrant them, a question of fact, not of law, is raised and, under
Section 421, the board is obliged either to sustain the referee or
grant a hearing de novo.

7. On a hearing de novo under Section 421, the depositions taken
before a referee may, by agreement of the parties, be accepted by
the board as proofs in the case, either for the purpose of finding its
own facts or formally adopting those found by the referee; but, on
a hearing solely to determine a point of law, raised by appeal under
Section 420, the testimony cannot be reëxamined for the purpose
of finding new facts, because those found by the referee, being un-
appealed from, are final under Section 409.

8. The word "appeal," at the present time, in our law, has no
conclusive meaning, and it is therefore necessary in each instance
to look at the particular act giving the right of appeal, to determine
just what powers are to be exercised by the appellate court.

9. The appeal from the board to the Common Pleas is in the
nature of a certiorari, the legislative purpose probably being to pre-
vent appeals to the courts, except for errors of law, and thus to
hasten the final determination of claims under the act.

10. While on certiorari judicial review is usually limited to a
mere inspection of the record, to ascertain whether the judgment
on the record is in conformity therewith, or to ascertain whether
the tribunal which rendered such judgment exceeded its jurisdic-
tion or abused its discretion, and the opinion of the lower tribunal
is ordinarily no part of the record, nevertheless in statutory pro-
ceedings such as under the Compensation Act of 1915, even on
certiorari an appellate court may examine the opinion of the court
below to see the basis on which it acted.

11. The notes of testimony are not properly a part of the record
sent up on appeal by the compensation board to the Common Pleas,
and, if they are mistakenly included in the record, they should not
be considered.

12. The right of review by the Supreme and Superior Courts in
a compensation claim is on certiorari alone, and their jurisdiction
is more analogous to that exercised upon the examination of equity
proceedings than on the review of common law actions, and the
court may examine all that is properly contained, according to the
provisions of the Workmen's Compensation Act of 1915, in the rec-
ord sent to the Common Pleas, including the findings and rea-
sons stated in the adjudications of the referee and board, and the
reasons given by the court below as the basis of its decision, but
not the notes of testimony.

13. Statutes of the character of the Workmen's Compensation
Act of 1915 contemplate liberality in the admission of proofs, and

the inferences reasonably to be drawn therefrom; but the evidence must be relevant and competent.

14. The probable nature of an accident followed by death for which compensation is claimed may be established by circumstantial evidence alone.

15. Neither the referee nor the board has the right to find material facts on hearsay alone.

16. While the Workmen's Compensation Act permits liberal investigation by hearing and otherwise, yet after all the data has been gathered without regard to technical rules, all irrelevant and incompetent testimony must be put aside and the findings made to rest upon such relevant and competent evidence of sound, probative character as may be left, whether circumstantial or direct.

17. Under Section 301 of the Workmen's Compensation Act, which provides, inter alia, that "the terms 'injury' and 'personal injury' shall be construed to mean only violence to the physical structure of the body, and such disease or infection as naturally results therefrom," the injury to the physical structure of the body need not be external violence but may originate from lifting heavy weights or from other provable causes, such as intense heat operating directly on the part of the body internally affected. If the incident which gives rise to the injurious results complained of can be classed properly as a mishap or fortuitous happening, or an untoward event, which is not expected or designed, it is an accident within the meaning of the workmen's compensation law.

18. Compensation can be allowed where death results from a germ infection if the disease in question must have been a sudden development from some abrupt violence to the physical structure of the body and not the mere result of gradual development from long continued exposure to natural dangers incident to the employment of the deceased person, as in cases of occupational diseases, the risks of which are voluntarily assumed.

19. As on certiorari the testimony is not before the courts, they are obliged to assume that the evidence was competent, relevant and sufficient in the absence of findings as to the character of the evidence.

20. On the hearing of a compensation claim for death of claimant's husband it appeared that deceased was a wool sorter in the employ of defendant, and that he died of external anthrax, a disease carried by sheep; that deceased when he left defendant's plant in the afternoon had a small scratch or abrasion on his neck, although he had no such mark when he left for work in the morning; and that this was the beginning of external anthrax from which he died within three days. The findings showed that professional medical experts testified that if deceased had no marks on his neck on the

day in question and sustained an abrasion and the neck immediately began to swell and external anthrax developed, this condition was probably brought about by the anthrax germ entering through the abrasion. *Held,* in view of the character of the employment of the deceased, the findings by the referee to the effect that the scratch upon the neck of deceased occurred during the course of his employment and at that time the anthrax germ entered his body, causing his death, justified the conclusion that he died as the result of an injury by an accident while acting in the course of his employment, and the claimant was entitled to compensation.

21. In such case where there were findings that on the afternoon on which deceased last left defendant's mill he remarked to his son "I got scratched with a sticker," and also that immediately upon his arrival home he told his wife that one of the stickers in the wool which he was carrying had torn him in the neck, such evidence was hearsay, and standing alone would be insufficient to sustain the findings in favor of the claimant made by the referee.

Argued March 25, 1918.   Appeal, No. 336, Jan. T., 1917, by defendant, from judgment of C. P. No. 3, Philadelphia Co., Dec. T., 1916, No. 4357, reversing decision of the Workmen's Compensation Board setting aside compensation award on claim petition No. 421, in case of Mary McCauley v. Imperial Woolen Company and London Guarantee and Accident Company.   Before MESTREZAT, POTTER, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Appeal from Workmen's Compensation Board. Before McMICHAEL, P. J.

The facts appear by the opinion of the Supreme Court.

The lower court reversed the decision of the Workmen's Compensation Board and entered judgment upon the original award of the referee.   Defendant appealed.

*Error assigned,* among others, was in reversing the decision of the Workmen's Compensation Board.

C. Donald Swartz, with him William W. Smithers, for appellant.—An award of compensation cannot be based

on hearsay evidence without support or corroboration of attending circumstances: Botto v. Wm. C. Hamilton & Sons Co., 3 Dep. Rep. 198.

Statements made by deceased employee prior to his death to his wife as to the cause of the injury from which he died, are inadmissible: Smith v. Hardman & Holden, Ltd., 6 B. W. C. C. 719; Carroll v. Knickerbocker Ice Co., 218 N. Y. 435.

The findings of fact of the compensation board, if there is any competent or legal evidence to support them, are conclusive and it is not within the province of the courts to set aside such findings, except when they are entirely unsupported by the evidence: Interstate Iron & Steel Co. v. Szot, 115 N. E. 599; Victor Chemical Works v. Industrial Board of Ill., 274 Ill. 11; Parker-Washington Co. v. Industrial Board of Illinois, 274 Ill. 498; Oniji v. Studebaker Corp., 163 N. W. 23; Gleisner v. Gross & Herberner, 170 N. Y. App. Div. 37; Prokopiak v. Buffalo Gas Co., 162 N. Y. Supp. 288; Nevich v. D., L. & W. R. R. Co., 100 Atl. 234; Goelitz v. Industrial Board of Illinois, 115 N. E. 855.

As there was a conflict in the circumstantial evidence upon which the disallowance of compensation was based, the decree of the Workmen's Compensation Board should not have been disturbed by the Common Pleas Court: Richmond Dredging Co. v. Industrial Acc. Commission, 164 Pac. 407.

*I. D. Levy* and *William Linton,* for appellee.—On appeal to the compensation board from the decision of the referee the board may grant a hearing de novo or sustain the award of the referee but it cannot reverse the referee unless only a question of law is involved: Yalch v. Jones & Laughlin Steel Company, 65 Pitts. L. J. 637.

Where a hearsay statement is so completely corroborated by the surrounding circumstances and probabilities that it is thoroughly convincing, a judicial tribunal will be justified in adopting it as an established fact:

Marcella Andrulis v. Delaware & Hudson Co., 2 Dep. Rep. 1325; Leary v. McIlvain, 3 Dep. Rep. 1619.

Where anthrax germs are admitted into the body through a scratch there is sufficient violence to the physical structure of the body within the meaning of the Workmen's Compensation Act of 1915: Murray v. Cunningham & Murray, 2 Dep. Rep. 2571.

Opinion by Mr. Justice Moschzisker, May 6, 1918:

The plaintiff, widow of James McCauley, claimed compensation for the death of her husband; the referee found in favor of the claimant; the Workmen's Compensation Board reversed this finding; the case was removed to the Common Pleas of Philadelphia County, which reversed the board and affirmed the referee; the defendant employer entered the present appeal.

Several interesting points of law are thus raised, which we shall pass upon separately. The first of them may be divided into three branches, i. e., the jurisdiction on appeal of (a) the compensation board, (b) the common pleas, and (c) this court; they will be considered in the order stated.

The Act of June 2, 1915, P. L. 736, in Section 409 (P. L. 751), stipulates that "a referee's findings of fact shall be final, unless the board shall allow an appeal therefrom as hereinafter provided." Section 419 (P. L. 753) provides that any party in interest may appeal to the board on the grounds: (1) that the referee's decision is not "in conformity with the terms of this act, or that the referee committed any other error of law"; (2) that the findings of fact and conclusions of the referee are "unwarranted by the evidence," or "because of fraud, coercion or other improper conduct by any party in interest."

Section 420 (P. L. 753) provides that when an appeal is based on alleged error of law, the board may either sustain, reverse or modify the decision of the referee. Section 421 (P. L. 753) provides that when the appeal is taken on the ground that the referee's decision is unwar-

ranted by the evidence, or because of improper conduct by a party in interest, the board may either sustain the referee or "grant a hearing de novo."

The referee is an officer of the board, vested with defined duties and powers; all records made by him belong to the files of that body, and, on appeal, are before it for review, within the limitations of the act. The statute contemplates and requires that, if, after inspection and consideration of the adjudication and evidence, the board does not sustain the referee's final decision, before the former may reverse on a question of fact, it must grant a hearing de novo, make investigation, and substitute its own findings of fact, and conclusions thereon, for such findings of the referee as are not adopted; but, when an appeal is based only on alleged error of law, the board must act solely upon the record of the referee and, thereon, it may either sustain, reverse or modify the latter's final order.

That learned jurist, President Judge SHAFER, of the Common Pleas of Allegheny County, in Yalch v. Jones & Laughlin Steel Company, 65 P. L. J. 636, 637, correctly construes the Act of 1915, supra, thus: Appeals to the board "are taken under two sections of the act [420 and 421]; the first amounts to a writ of error, and the second to a motion for a new trial, the new trial to be had before the board instead of the referee. The first of them is to redress errors of law committed by the referee, and the second to review his findings of fact when it is claimed they are not warranted by the evidence. The finding of fact without any evidence at all is an error of law. While the appeal in this case is taken because it is alleged that the findings of fact are not supported by the evidence, this does not prevent the board from treating the appeal as taken under section 420, rather than section 421."

In cases of the character of the present claim, the ultimate finding is often cast in the form of a mixed conclusion of fact and law; and, under such circumstances, if

the classification of an appeal is not made plain by the appellant, ex necessitate the board must exercise its discretion in determining the nature thereof. Here, admittedly, the appeal was properly treated as turning on a point of law.

The real contention is an utter lack of legal evidence to sustain the referee's conclusion that the death of James McCauley was occasioned by an accident occurring in the course of his employment. In other words, the defendant employer does not controvert, as matter of fact, that McCauley's death was due to the cause set up by claimant, but denies there is any legal proof to show that this causal event, which is alleged as an accident, happened while deceased was engaged in the course of his employment. This contention raises a question of law, which the board had power to determine under section 420, upon a consideration of the legal adequacy of the testimony taken before the referee; had the attack been simply upon the ground that the testimony was insufficient in fact to justify the latter's findings, and not that there was no legal evidence whatever to warrant them, a question of fact, not of law, would have been raised; and, under section 421, the board would have been obliged either to sustain the referee or grant a new hearing.

On a hearing de novo under section 421, the depositions taken before the referee might, by agreement of the parties, be accepted by the board as proofs in the case, either for the purpose of finding its own facts or formally adopting those stated by the referee; but, on a hearing solely to determine a point of law, raised by appeal under section 420, the testimony has no place in the consideration for the purpose of finding new facts, because those found by the referee, being unappealed from, are final under section 409. In a case like the one at bar, however, the board must consider the legal sufficiency of the testimony, not to find new facts, but in order to determine whether or not those relied upon by the referee may stand in law. Of course, if the appeal raises both ques-

tions of fact and law, the board may treat it accordingly. In this instance, the board acted in conformity with the intent of the parties, and proper procedure, when it finally disposed of the point involved as one of law; the question of the correctness of its legal conclusion will be adjudged later in this opinion.

The next matter for our consideration concerns the rights and duties of the common pleas upon the appeal to that tribunal from the decision of the compensation board. Section 409 of the Act of 1915, supra, provides that "the board's findings of fact shall in all cases be final......, [but] from any decision of the board on a question of law an appeal may be taken to the courts as hereinafter provided." Section 425 (P. L. 754) provides that, if any party in interest desires to appeal from the decision of the board "on matters of law," he must file notice in the appropriate Court of Common Pleas, and, in such case, it shall be the duty of the Bureau of Workmen's Compensation to prepare and deliver to the prothonotary of the proper county "a transcript of the ......finding of fact and award or disallowance of compensation, or modification thereof, involved in the appeal."

As recently stated in Franklin Film Manufacturing Corporation, 253 Pa. 422, 426, "at the present time, in our law, the word 'appeal' has no conclusive meaning ......; therefore it is necessary in each instance to look at the particular act of assembly giving the right of appeal, to determine just what powers are to be exercised by the appellate court."

The statute here in question makes no provision for bringing up the testimony to the courts by sealing a bill, certifying the record thereof, or other known method; more than this, the act particularly prescribes what shall be sent to the common pleas—significantly, in view of its provisions as to the finality of the findings of fact, omitting reference to the evidence taken before the referee or board—all of which makes it clear that the appeal to

the common pleas contemplated by this statute is in the nature of a certiorari, the purpose probably being to prevent appeals to the courts, except for errors of law, and thus to hasten the final determination of claims under the act.

It may be noted that, if the legislature had desired the testimony in workmen's compensation cases brought up on appeal, by the courts, for consideration, it knew how to accomplish this end, as shown by Article VI, Section 18, of the Public Service Company Law (Act of July 26, 1913, P. L. 1374, 1425), where it is provided that, on such appeals from the utilities commission, the testimony shall be certified, "under seal," as part of the record for consideration: see St. Clair Boro. v. Tamaqua & P. E. Ry. Co., 259 Pa. 462, 467.

On certiorari, judicial review is usually limited to a mere inspection of the record, to ascertain whether the judgment in question is in conformity therewith, or to see whether the tribunal which rendered such judgment either exceeded its jurisdiction or abused its discretion; and, generally speaking, the opinion of the lower tribunal is no part of the record. In statutory proceedings such as the one at bar, however, it is now firmly established with us that, even on certiorari, an appellate court may examine the opinion of the court below "to see the basis on which it acted": Franklin Film Mfg. Corp., supra, p. 426.

Here, fortunately for the claimant, the material underlying, or subordinate, findings of both the referee and board, as stated in their respective adjudications, are consistent with one another and show the exact character of proof upon which their divergent conclusions rest. Hence, albeit the common pleas properly could not examine the notes of testimony mistakenly included in the record sent to it (Carlson's License, 127 Pa. 330, 335; RICE, P. J., in Meenan's App., 11 Pa. Superior Ct. 579, 582), that tribunal was, and this court now is, in a position to determine the issue of the alleged lack of legal

evidence to sustain the referee's allowance of compensation; whether or not the conclusion of the court below in that regard was correct, we reserve for later consideration in this opinion.

As to the jurisdiction of the Supreme Court on the present appeal, Section 409 of the Act of 1915, already quoted, provides that from any decision of the board "on a question of law" an appeal may be taken "to the courts." The first specific mention of either the Supreme or Superior Court occurs at the end of section 425, as follows: "Any appeal from a decision of the board to the Courts of Common Pleas, and from them to the Supreme or Superior Court, shall take precedence over all other civil cases." The next and only other reference to the latter courts appears in Section 433 (P. L. 756), to the effect that it shall be the duty of their prothonotary "to make a monthly report to the board of the disposition of all appeals taken to such courts," in workmen's compensation cases. Thus it becomes apparent there is no actual provision contained in the Act of 1915, supra, authorizing an appeal from the Common Pleas to either the Supreme or Superior Court; hence, our right of review is on certiorari alone: Gangewere's App., 61 Pa. 342; Diamond St., 196 Pa. 254, 261.

The proceedings at bar being purely statutory, and differing from the common law, as already noted, on certiorari our jurisdiction is more analogous to that exercised upon the examination of equity proceedings than on the review of common law actions; and in the former class of cases the opinion of the chancellor may be looked at to discover the reasons for his action: Independence Party Nomination, 208 Pa. 108, 111; Foy's Election, 228 Pa. 14, 16 et seq.; Franklin Film Mfg. Corp., supra. Therefore, on the present review, this court may examine all that is properly contained (according to the provisions of the Act of 1915, supra) in the record sent to the common pleas, including the findings and reasons stated in the adjudications of the referee and board; and, of

course, also including the reasons given by the court below as the "basis" of its decision, but not the notes of testimony.

The foregoing considerations bring us to the controlling question in the case, i. e., whether the records referred to demonstrate either the presence or lack of legal evidence to sustain the findings of the referee to the effect that claimant's husband came to his death as the result of an accident which happened to him during the course of his employment.

James McCauley was a "wool sorter" in the employ of defendant; the latter admitted he died "of external, and not internal, anthrax." Concededly, it is a matter of general knowledge that anthrax is primarily a disease of animals, such as sheep, which may be transmitted to men when handling infected animal materials, like wool; it is caused by the entrance into the human body of anthrax bacilli, and their rapid multiplication and development. The findings of the referee show a practical accord among the doctors, produced as experts, that, in the majority of cases, the inoculation which causes external anthrax occurs through a scratch or an abrasion of the skin; while internal anthrax is usually caused by inhaling the germ, or taking it in with food.

The findings further show that, when James McCauley went to his work on the morning of April 4, 1916, he was perfectly well and had no abrasion or mark upon his neck, but when he left defendant's plant, in the afternoon of that day, there was a "little scratch," or abrasion, "about the size of a dime," just above the "Adam's apple," which caused a swelling; and that this was the beginning of external anthrax, from which he died within three days.

The findings likewise show professional medical experts testified that, in their opinion, "if deceased was a wool sorter [as he was] when he went to work on April 4, 1916, with no marks on his neck, and sustained an abrasion about the size of a dime upon his neck, and the

neck immediately began to swell, and external anthrax developed, this condition probably was brought about by the anthrax germ entering through the abrasion."

In addition to the findings just referred to, others show that, on the afternoon of April 4th, as McCauley was leaving defendant's mill, he said to his son, "I got stuck with a sticker"; also that, immediately upon his arrival home, he told his wife that one of the stickers in the wool which he was carrying had torn him in the neck.

The board properly decided that what McCauley said, as to the cause of the mark upon his neck, is hearsay, and, standing alone, insufficient to sustain the findings in favor of the claimant made by the referee; but we concur in the view of the court below that the other facts in the case constitute circumstantial evidence which, together with the competent and relevant parts of the expert professional testimony already referred to, was adequate to sustain the referee's allowance of compensation. In other words, under the circumstances of this case, deceased apparently not having been where he was liable to become inoculated with external anthrax, except at his work, and he, as he left defendant's mill, on the day in question, having shown symptoms of that disease by the mark upon and swelling of his neck, the inference may reasonably be drawn, in view of the nature of the work on which he was engaged, that the inoculation occurred during the course of his employment; or, as said by one of the doctors, in all probability "the disease was caused by the anthrax germ entering through the skin by reason of a 'sticker' from the wool which deceased handled during the day."

In reaching the conclusion just stated, we have not examined the notes of testimony; which, as herein previously decided, were not properly before the court below and, therefore, are not part of the record on this appeal. For the purpose of determining the point involved, we have restricted our consideration to the reasons stated in the several adjudications before us, as the basis of the

respective conclusions contained therein, and the material underlying findings of the referee and the board, which, as previously stated, are consistent with each other and sufficiently indicate the character of evidence upon which the divergent ultimate, or controlling, findings rest. While findings of the latter class cannot be sustained on review when those of the former class show a fatal lack of legal evidence (which is not the case at bar), at the same time it is to be kept in mind that statutes of the character of the one now before us contemplate liberality in the admission of proofs and the inferences reasonably to be drawn therefrom; also that, even under the old law, the probable nature of an accident followed by death could be established by circumstantial evidence alone: Weinschenk v. Philadelphia H. M. Bread Co., 258 Pa. 98, 104.

On the subject of the proofs, section 428 (P. L. 755) of the Act of 1915, supra, provides that "neither the board nor any referee shall be bound by the technical rules of evidence in conducting any hearing or investigation." Section 417 (P. L. 752) provides that the referee, "either before or after any hearing" may "make an investigation of the facts set forth in the petition, or cause the same to be made," and that, with the consent of the board, he may appoint impartial experts to "ascertain the facts"; while section 421 states the board shall have power to make such investigations as it may deem necessary to ascertain the facts, and to "employ physicians, surgeons, or other experts, to aid in its investigation." Section 17 of the companion Act of June 2, 1915, P. L. 758 (760), also provides that "the board and every referee shall have the power to conduct any investigation which may be deemed necessary to ascertain the facts of any claim, or any other matter properly before such board or referee," and "such investigations may be made by the board or referees, personally,......or by any other person or persons authorized by law."

These provisions do not mean, however, that either the

referee or board has the right to find material facts on hearsay alone, whether such evidence is developed in the course of formal hearings or in less formal investigations; for, in the first place, the rule which forbids the making of material findings on hearsay alone, is more than a technical rule of evidence, and, next, there is nothing in the act before us which justifies the conclusion that the legislature intended any such loose method for determining material facts.

The act permits liberal investigation, by hearing and otherwise; but, after all the data has been gathered without regard to technical rules, then the proofs must be examined, and that which is not evidence within the meaning of the law, must be excluded from consideration; that is to say, when all the irrelevant and incompetent testimony has been put aside, the findings must rest upon such relevant and competent evidence of sound, probative character as may be left, be this either circumstantial or direct.

Here, the underlying findings show sufficient evidence of the kind just mentioned to sustain the ultimate, or controlling, findings made by the referee, to the effect that the scratch upon the neck of James McCauley occurred during the course of his employment and, at that time, the anthrax germ entered the body of deceased, subsequently causing his death. On these latter findings, the referee was justified in concluding that McCauley died as the result of an injury by accident while acting in the course of his employment, and, hence, that claimant was entitled to compensation.

Section 1, of the Act of 1915, supra, provides that the statute shall apply to "all accidents" occurring within this Commonwealth; this being limited by section 301 (P. L. 738) to cases where the employer and employee shall by agreement, "either express or implied," accept the provisions of the act. The section in question provides that, in such instances, "compensation for personal injury to, or for the death of, such employee, by an acci-

dent, in the course of his employment, shall be made."
It then provides that "the terms 'injury' and 'personal
injury'......shall be construed to mean only violence to
the physical structure of the body, and such disease or
infection as naturally results therefrom," and, wherever
death is mentioned, "it shall mean only death resulting
from such violence and its resultant effects"; further,
that "the term 'injury by an accident in the course of his
employment'......shall not include an injury caused
by an act of a third person intended to injure the em-
ployee because of reasons personal to him and not direct-
ed against him as an employee or because of his employ-
ment, but shall include all other injuries sustained while
the employee is actually engaged in the furtherance of
the business or affairs of the employer." It is plain
from these provisions that the act before us contemplates
injuries by accident only, and, therefore, does not cover
what are termed "occupational diseases."

It remains but to show that, in this case, the entry of
the anthrax germ into the body of the deceased, and
the disease or infection which naturally resulted there-
from, can be held properly to constitute an accident
within the meaning of the act. In this connection, it is
to be noted that there is nothing in the language quoted
from section 301 which requires an injury to be
caused through force externally applied, or, much less,
by some tangible substance of material size. The words
used are "violence to the physical structure of the body,"
not injury to the physical structure of the body by exter-
nal violence. The violence in question may originate
from lifting heavy weights, or from other provable cause
(for instance, intense heat operating directly on the
part of the body internally affected: see Lane v. Horn
& Hardart Co., 261 Pa. 329,) which effect a sud-
den change in the physical structure or tissues
of the body, and still be within the compensation
act. In short, if the incident which gives rise to the in-
jurious results complained of can be classed properly as

a "mishap," or "fortuitous" happening—an "untoward event, which is not expected or designed"—it is an accident within the meaning of the workmen's compensation law: see House of Lords case of Fenton v. Thorley & Co., 19 T. L. R. 684, 685; Boardman v. Scott & Whitworth (1902), 1 K. B. 43, 46. When, however, death results from germ infection, to bring a case of this character within the Act of 1915, supra, the disease in question must be a sudden development from some such abrupt violence to the physical structure of the body as already indicated, and not the mere result of gradual development from long continued exposure to natural dangers incident to the employment of the deceased person, as in cases of occupational diseases, the risks of which are voluntarily assumed.

Here, the anthrax germ, a distinguishable entity, came into actual contact with the deceased, thus gaining an entrance into his body, and his neck began to swell and discolor; therefore the complaint from which McCauley died can be traced to a certain time when there was a sudden or violent change in the condition of the physical structure of his body, just as though a serpent, concealed in the material upon which he was working, had unexpectedly and suddenly bitten him: see Hiers v. Hull & Co., 178 N. Y. (App. Div.) 350, 352.

In reading this opinion, one must constantly keep in mind that the compensation board did not treat the appeal to it as on an allegation of mistake of fact, and grant a hearing de novo, but as involving and turning upon a question of law, i. e., was there legal proof to sustain the conclusion of the referee? Under these circumstances, that body had no power to make separate findings of fact; hence the statutory rule that "the board's findings of fact shall in all cases be final" (held to be binding upon the courts in Poluskiewicz v. P. & R. C. & I. Co., 257 Pa. 305) does not apply. The findings referred to in section 409 of the act, as just quoted, mean either those made after a hearing de novo before the board or con-

tained in the report of the referee and affirmed by the former. In the present case, had the board considered the appeal to it as involving questions of fact, granted a hearing de novo and made its own findings, restricting them to what it considered the ultimate, or controlling, facts involved, the court below would have been powerless to interfere, so far as the question now before us is concerned, unless the record had been returned for additional findings (Poluskiewicz v. P. & R. C. & I. Co., supra); for, on certiorari, the testimony not being up for review, in the absence of findings as to the character of the evidence, the courts would be obliged to assume the latter competent, relevant and sufficient: Tool's App., 90 Pa. 376; DiNubiles's License, 11 Pa. Superior Ct. 571, 573; Meenan's License, 11 Pa. Superior Ct. 575, 578; Meenan's App., supra. Here, however, the written opinions of both the board and referee so plainly show, by findings, the character of the evidence, as to enable the courts to adjudge the legal question involved. Therefore the case is reduced to this: We having determined that there is no lack of legal proof to sustain the findings of the referee, and there having been no appeal from these findings as matters of fact, the provision in section 409 of the act, that "a referee's findings of fact shall be final unless the board shall allow an appeal therefrom," applies and governs in favor of the appellee.

The assignments of error are overruled, and the judgment of the court below is affirmed, with a procedendo.