## Harkulic v. G. B. Markle Company.

*Workmen's Compensation Law — Dependency — Evidence — Sufficiency — Finding of fact — Reversal of referee without hearing de novo — Act of June 2, 1915.*

1. Upon a hearing on a petition for an award of compensation under the Workmen's Compensation Act of June 2, 1915, P. L. 736, competent and relevant evidence should be considered, notwithstanding informality in its production.

2. When the fact that his widow was dependent upon the deceased employee is established by competent affidavits and the referee has awarded compensation, the Workmen's Compensation Board is not authorized to reverse the finding of the referee and substitute therefor its own finding of fact without having first granted a hearing *de novo.*

Appeal from order of Workmen's Compensation Board. C. P. Luzerne Co., Oct. T., 1924, No. 1242.

*John Menovsky* and *John Kulamer,* for plaintiff.

*John H. Bigelow,* for defendant.

McLEAN, J., Jan. 13, 1925.—An alien widow, claimant under the Workmen's Compensation Law, on letters rogatory, testified that she was married to George Harkulic in 1894 in Austria-Hungary; that he removed to the United States in that year and returned to Austria-Hungary in 1902, in which year a child was born; thereafter he returned to the United States and resided continuously here until 1917, when he met with a fatal accident; that Harkulic went to America with her consent, because they were poor, to get work; that she received money from him several times by mail, the amount of which she could not remember; that she was supported by what she earned and by what money her husband sent from America. This testimony was in part corroborated by the village elder.

Claimant appealed from the award of the Workmen's Compensation Board disallowing the claim of the widow. The referee before whom the case was heard allowed the claim of the widow and child and found the following fact: "The widow of decedent is living and one son, George Harkulic, and are residents of Nacina Ves, Dist. Michalevec, Kemplin County, Czecho-Slovak Republic, and were dependent upon decedent for support at the time of his accident and death."

This finding the board reversed, and in opinion filed substituted therefor the following finding of fact: "We find as a fact that the decedent's widow was not living with her husband at the time of his death and was not actually dependent upon him for support."

We quote as follows from the opinion of the board: "The widow states that her husband left her with her son, and her testimony relative to the manner in which he supported her is as follows: 'Q. Did he send you money from America for your support? A. Yes. Q. If so, when and how much? Give dates and amounts and through whom he sent it. A. He sent several times. I don't remember how much. The village elder, George Snajder, and George Biro can prove this. Q. How did you support yourself while your husband was in America? A. I supported myself from my work and from the money which he sent me from America.'

"Her answers to the cross-interrogatories are as follows: 'Q. Through what agency, bank or trust company did you receive remittances? A. I received the money at the post-office. Q. Through what agency, bank or trust company was the remittance transmitted? A. The money was sent by some bank in America, but what bank I do not know. Q. Submit any and all communications in your possession concerning said remittances? A. I have none.

Q. Who has maintained you since the death of your husband?    A. No one, for I worked myself.'

"It seems to us that if the claimant in this case was receiving remittances from her husband with sufficient frequency to be a factor in her support she should have been able to have fixed the amount received at least approximately and to have given some testimony as to when the last support was received. There is nothing of this character in her answers to the interrogatories or cross-interrogatories. In our opinion, the testimony is not sufficient to prove her dependency. We must conclude that the widow is not entitled to compensation and that the referee erred in making an award in her favor."

There was other testimony on the matter of the family relation and the remittances sent the wife by the husband, viz., that of the village elder in answer to interrogatories 8, 9 and 10, as follows: "8. Did he go to America with the knowledge and consent of his wife, if you know? A. He went with the consent of his wife, because the whole village knows it. 9. Did George Harkulic send money from America to his wife? A. Yes. 10. How do you know that he sent her money? A. I know, because I saw the widow signing the postal advices for money."

The record of the proceedings before the referee at page 5 shows the following offer by claimant's counsel: "Claimant offers in evidence the letters rogatory, interrogatories, cross-interrogatories, depositions, together with a true and correct translation of the same."

Incorporated in the records submitted by the referee is an affidavit of the widow, marked for identification as page 18 and the translation thereof appearing in the record and marked as page 19, which, in part, reads as follows: "I remark now that my husband was sending me all money for the period of thirteen years, for the last time in the year 1914.

"Having been informed regarding the oath, the widow, who is personally known to the undersigned district judge and witnesses, declares: I swear upon it that my late husband was sending me always money for the thirteen years till to the time when the war broke out, which received sums amount to $500 a year. I have no receipts nor other writings, for they were lost some time ago and I have threw them away, so that I am unable to enclose them to-day. Maybe that he had sent even more than $500 the one year and less the other year."

This was competent and relevant evidence and should have been considered, notwithstanding the informality of its production.

"The act permits liberal investigation, by hearing and otherwise; but after all the data has been gathered without regard to technical rules, then the proofs must be examined, and that which is not evidence within the meaning of the law must be excluded from consideration; that is to say, when all the irrelevant and incompetent testimony has been put aside, the findings must rest upon such relevant and competent evidence of sound, probative character as may be left, be this either circumstantial or direct:" McCauley *v.* Imperial Woolen Co., 261 Pa. 312-326.

It would seem that the case was made to turn upon the failure of the claimant to show in her answers to the interrogatories the approximate amount of money received from her husband and when the last support was received; however, we cannot find in the interrogatories the specific questions to which these specific answers would have been appropriate, while the affidavit referred to above is directly in point and supplies the precise information.

The reported case of Petro *v.* Windber Clay Manuf. Co., 72 Pitts. L. J. 131, is strikingly similar to the case at bar, both as to the character of the testi-

mony and the manner of its production. In that case the board sustained the referee and the award of compensation.

In examining the procedure in this case, it appears that the board reversed a finding of fact of the referee and submitted therefor its own finding of fact without first having granted a hearing *de novo;* this action was unauthorized under section 421 of the Act of June 2, 1915, P. L. 736, 753 (Zadwick v. Lehigh and Wilkes-Barre Coal Co., 20 Luzerne Legal Reg. 37; McCauley v. Imperial Woolen Co., 261 Pa. 312, 319). Accordingly,

Claimant's appeal is sustained, the order of the Workmen's Compensation Board setting aside the finding and the award of the referee is reversed, and said board is now directed to grant a hearing *de novo* in accordance with section 421 of the Workmen's Compensation Act of June 2, 1915, P. L. 736, 753.

From F. P. Slattery, Wilkes-Barre, Pa.