## Pittston Beverage Co. v. Pennsylvania Alcohol Permit Board.

*Abram Salsburg*, for appellant.

*Wilhelm F. Knauer*, Special Deputy Attorney-General, contra.

FINE, J., March 27, 1930.—This is an appeal from the order of the Alcohol Permit Board, revoking permit granted to plaintiff to operate a brewery or

cereal beverage plant in Pittston. The record of the testimony taken before the Federal Prohibition Administrator, on citation to revoke the Federal permit, was submitted at the hearing before the Permit Board, as well as additional testimony from three of the witnesses who testified in the Federal proceedings. The testimony taken at both hearings was filed, by agreement of counsel, as the record in this appeal, "with the same force and effect as if the witnesses had personally appeared and testified." The Federal Administrator saw all of the witnesses and heard them testify; the Permit Board, three of them; and this court, not any. Hence, we have least opportunity of appraising the value of the testimony of the respective witnesses.

After perusing the entire record in this appeal, we find the following

### Facts.

1. That the plaintiff was, on Nov. 3, 1928, the holder of a permit granted by the Pennsylvania Alcohol Permit Board, authorizing it to manufacture, produce, distill, develop, use in the process of manufacture, redistill, recover, reüse, store, sell at wholesale and remove alcohol or alcoholic liquid produced in the process of operating a brewery or cereal beverage plant, all in full accordance with the laws and regulations of the United States and the Commonwealth of Pennsylvania applying to breweries and manufacture of cereal beverages.

2. That the plaintiff, on Nov. 3, 1928, possessed a Federal permit, conferring upon it powers and privileges as conferred by Pennsylvania permit in Fact 1.

3. That the aforesaid permit invested the plaintiff with the powers and privileges of engaging in the business of manufacturing cereal beverages containing less than one-half of 1 per cent. of alcohol by volume at its brewery or cereal beverage plant located on the southeast corner of North Main Street, Pittston.

4. That permittee, on or about Nov. 3, 1928, unlawfully manufactured and possessed on its premises cereal beverage or beer containing 4.56 per cent. by volume.

5. That the plaintiff, on or about the aforesaid date, possessed, placed and stored on its premises where cereal beverage is made, forty-six half-barrels of cereal beverage or beer containing over 4 per cent. of alcohol by volume.

6. That the permittee, at or about 7.45 P. M. on said date, loaded on and delivered to the truck on its premises, for transportation, forty-six half-barrels of cereal beverage or beer in excess of 4 per cent. of alcohol by volume; the said beer, so possessed, placed and stored on a truck on the brewery premises, was fit and capable for use for beverage purposes.

7. That the permittee failed to secure and attach labels to any of the containers on the truck on its premises containing cereal beverage or beer.

8. That Federal prohibition agents, Paul T. Hurley and Leo F. Durkin, on or about Nov. 3, 1928, at or about 7.45 o'clock P. M., forced their entrance into the permittee's brewery premises, which was locked, and took a sample of beer from the drain in the said racking-room which, upon being tested by the said agents on the premises with an ebullimeter, showed an alcoholic content of approximately 1.45 per cent. of alcohol by volume.

9. That on or about Nov. 3, 1928, Federal prohibition agents, Paul T. Hurley and Leo F. Durkin, took a sample of cereal beverage or beer from one of the forty-six half-barrels of beer in the truck on the permittee's premises and a sample of the liquid in the drain in the racking-room of the said premises; placed the same in clean bottles, poisoned to arrest fermentation, sealed,

labeled and initialed by them and delivered same to Kenneth L. Proctor, Federal chemist, for analysis.

10. That the analysis made by Kenneth L. Proctor, Federal chemist, of the two samples of cereal beverage or beer showed an alcoholic content of 4.56 per cent. and 1.14 per cent. of alcohol by volume.

### Discussion.

The agreement of counsel that the testimony adduced in proceedings to revoke permit be filed of record in this case "with the same force and effect as if the witnesses had personally appeared and testified," was, in effect, treating the hearing before us as *de novo*. Under the Act of Feb. 19, 1926, P. L. 16, on an appeal from an order of the Permit Board, the proceeding is *de novo* in the Court of Common Pleas (Kutz v. Pennsylvania Alcohol Permit Board, 296 Pa. 149); but where the only allegation raised on appeal is the abuse of discretion by the Permit Board, the parties in court need not treat the proceeding *de novo*, especially where there is submitted merely the report of the board, accompanied by transcript of the evidence before that body: E. & S. Motor Transportation Co. v. Pennsylvania Alcohol Permit Board, 295 Pa. 394.

On a hearing *de novo* under the Workmen's Compensation Law, depositions taken before a referee may, by agreement of the parties, be accepted by the board as proofs in the case, either for the purpose of finding its own facts or formally adopting those found by the referee (McCauley v. Imperial W. Co., 261 Pa. 312); and the testimony upon hearing, or rehearing, or a hearing *de novo*, may be taken before the board itself, or for the convenience and accommodation of the parties before a referee, or even by depositions, as directed by the board, from which testimony the board, instead of the referee, makes the necessary findings and award: Davis v. Davis, 80 Pa. Superior Ct. 343.

However unsatisfactory it may be to treat this proceeding *de novo*, without the opportunity of seeing any of the witnesses, and only upon the bare records of the Federal Prohibition Administrator and the Pennsylvania Alcohol Permit Board, we are obliged to consider it a *de novo* hearing, as agreed by counsel.

It appears that about 7.45 P. M., on Nov. 3, 1928, Paul T. Hurley, Federal prohibition inspector, and Leo F. Durkin, Federal prohibition agent, visited the premises of the plaintiff and entered the cooperage room. The former discovered an opening in the wall leading from the cooperage room to a garage adjoining, the latter being part of the brewery premises, and so designated in the permit. A truck loaded with forty-five half-barrels, unlabeled and filled with beer, which upon analysis showed an alcoholic content in excess of 4 per cent. by volume, was found in the garage. The racking-room was then entered and showed some *indicia* of recent usage. There were no employees present at the time of the raid.

One of the agents testified that on a previous inspection trip instructions were given to the plaintiffs to close the opening leading from the cooperage room to the garage, and assurance was then given that the hole would be sealed with bricks.

The plaintiff explains, or attempts to explain, the presence of the beer on the truck by the testimony of the truck driver, who was employed by the lessee of the garage and owner of the truck. It is rather significant the operator of the truck had a lapse of memory on important and controlling facts. He stated he secured the beer from a loaded car on Dock Street, Pitts-

ton City, for a Mr. Stefango, whom he did not know personally and whose whereabouts were, and still are, unknown to him; that he had driven his car to the garage to have it repaired before proceeding with the load of beer to Old Forge. Corroboration of testimony that the automobile had developed engine trouble was secured from Patrick Ruane. The latter, it may be noted, repaired all automobiles of the plaintiff concern.

As stated in the report of the Federal Administrator, "the defense wants the hearer to believe that the driver accidentally met this person about whom little is known; that his car broke down; that the one who fixes the cars for the brewery happily appeared at the psychological moment, and that the beer found belonged to this unknown person, and he alone was responsible for its presence in the garage;" . . . [and] . . . "that, even though the driver had his doubts about the legality of his acts, he placed enough confidence in this person, about whom he knew so little, as to accept his word that everything was all right."

Again, the lessee of the premises by whom the truck driver was employed could not remember the name of the person with whom he negotiated in leasing the garage; nor did he notice any hole between the cooperage-room and the garage. As a matter of fact, he had a lack of knowledge inconsistent with two years' occupancy of the premises.

We agree with the plaintiff that "we have not reached the stage in legal jurisprudence of our state and country when a suspicion, strong perhaps, has grown into a fact." Nor can we ignore the inevitable inferences following from proven circumstances which forcibly reveal violations of prohibition enactments. Greater reluctance to draw logical inferences cannot be shown in this class than in other classes of cases; neither should we discard that conclusion from the evidence which strikes our mind with force and credibility and accept the unbelievable testimony and attempted explanations, tinged though they are with bias and incredulity.

### Conclusions of law.

1. That all proceedings before the Pennsylvania Alcohol Permit Board were regular, and the said board has jurisdiction of the matters before it.

2. That the Pittston Beverage Company, on or about Nov. 3, 1928, unlawfully manufactured, possessed, placed and stored on their brewery premises and transported in barrels and half-barrels, cereal beverages or beer fit for use for beverage purposes containing from 1.14 per cent. to 4.56 per cent. of alcohol by volume, and failed to label said containers in violation of the National Prohibition Act and the regulations promulgated thereunder, and conducted business contrary to the Act of March 27, 1923, P. L. 34, and its supplements, the Act of Feb. 19, 1926, P. L. 16, and the general rules and regulations promulgated by the Permit Board.

3. That the report of the Alcohol Permit Board, filed March 26, 1929, revoking appellant's permit and forfeiting its bond, was based upon ample evidence, and should be affirmed.

Accordingly, now, March 27, 1930, the testimony and order of the Pennsylvania Alcohol Board, revoking the permit issued to the Pittston Beverage Company to engage in the business of manufacturing cereal beverages containing less than one-half of 1 per cent. of alcohol by volume, and forfeiting the bond given by the said plaintiff as principal and the American Surety Company of New York as surety, is affirmed, and the appeal is dismissed.

From Frank P. Slattery, Wilkes-Barre, Pa.