## Saybolt's License

*Nathan Markmann*, for appellant.

*J. Myron Shimer*, Special Deputy Attorney General, for Liquor Control Board.

MILNER, J., April 16, 1945.—We have before us for consideration the appeal of Joseph Saybolt from the order of the Pennsylvania Liquor Control Board revoking restaurant liquor licenses issued to him for premises 1901 East Cumberland Street, Philadelphia, for the years beginning November 1, 1942, and ending October 31, 1943, and beginning November 1, 1943, and ending October 31, 1944, upon his applications therefor as owner.

On July 24, 1944, the Liquor Control Board issued two citations against Saybolt to show cause why his above-mentioned licenses should not be revoked, upon which hearings were had before an examiner for the board. The citations, order of the board and the record made before the board's examiner were submitted as part of the record on appeal before this court, and at the hearing before this court the only additional testimony was that given by John G. Dillon who represented Saybolt in the purchase of the taproom at 1901 East Cumberland Street.

The Liquor Control Board found that Saybolt: (1) "Is not the only person in any manner pecuniarily interested in the operation of the licensed premises"; (2) he "falsified his application" for the above-mentioned licenses; (3) he "has been employed at other than the licensed business without the approval of the Pennsylvania Liquor Control Board".

Under the provisions of the Pennsylvania Liquor Control Act of June 16, 1937, P. L. 1762, the Liquor Control Board has the power "To grant, issue, suspend, and revoke all licenses and permits, authorized to be issued under this act and the regulations of the board": section 201 (*d*) ; and to "make such regulations, not inconsistent with this act, as it may deem necessary for the efficient administration of this act": section 202. Section 402 of the act provides that every applicant for a restaurant liquor license "shall file a written application with the board, in such form and containing such information as the board shall, . . . prescribe" and that all applications must be verified by affidavit of the applicant.

The other pertinent sections of the Pennsylvania Liquor Control Act are as follows:

Section 403: "Upon receipt of the application, the proper fees, and bond, and upon being satisfied of the truth of the statements in the application that the applicant is the only person in any manner pecuniarily interested in the business so asked to be licensed, and that no other person will be in any manner pecuniarily interested therein during the continuance of the license, except as hereinafter permitted, and that the applicant is a person of good repute . . . the board shall, in the case of a hotel or restaurant, grant and issue to the applicant a liquor license . . ."

Section 410. "Upon learning of any violation of this act, or any laws of this Commonwealth relating to liquor, alcohol, or malt or brewed beverages, or of any regulations of the board adopted pursuant to such laws,

or any violation of any laws of this Commonwealth or of the United States of America relating to the tax payment of liquor or malt or brewed beverages by any licensee, his officers, servants, agents or employes, or upon any other sufficient cause shown, the board may, within one year from the date of such violation or cause appearing, cite such licensee to appear before it or its examiner . . . to show cause why such license should not be suspended or revoked. Hearings on such citation shall be held in the same manner as provided herein for hearings on applications for license. [See Section 404] Upon such hearing, if satisfied that any such violation has occurred, or for other sufficient cause, the board shall immediately suspend or revoke the license . . ."

The pertinent regulations of the board are as follows:

"Regulation R43-19B

"Subject: Employment of Licensees and Appointment of Managers.

"Section 1. Operation of license. A liquor or retail dispenser's license is a personal privilege which must be exercised by the individual to whom the license is issued. The operation of a licensed business is a full time responsibility requiring the constant attention of the licensee.

"Section 2. Employment of licensee. No individual holding a liquor or retail dispenser's license in his own name is permitted to be employed at, or engaged in any other business except with the approval of the board and then only in accordance with board regulations. The licensee shall spend the major portion of every day on his licensed premises in charge of the business.

"Section 3. Appointment of managers. In the event of illness or an extended vacation, the liquor control board will approve the appointment of a manager for a period of not more than thirty days. In case of emergency, this approval may be extended, upon written request from the licensee. This manager shall be a repu-

table citizen of the United States, and the licensee shall immediately notify the board in writing of his desire to appoint a manager, giving the name and home address of the manager, and the date and place of birth and naturalization. If there is any change of manager, the licensee shall immediately give to the board written notice of such change, together will full information for the new person desired to be appointed. No individual may act in the capacity of manager in a licensed establishment until the licensee has received notice from the board that his appointment meets with approval."

From the testimony and exhibits offered in evidence it appears that Saybolt in January 1941, applied for the transfer of the restaurant liquor license for premises 1901 East Cumberland Street from Charles Rapp, from whom he testified that he bought the license. The license was granted on his application on November 1, 1942, for one year and upon his application it was on November 1, 1943, renewed for another year. The purchase price was about $3,100 and Saybolt informed the board that he had borrowed the money to make the purchase from his uncle, Louis Kazmer, and his mother had also loaned him about $300. He executed 31 judgment notes for $100 each, payable to Louis and Carrie Kazmer every 15 days successively after March 15, 1941. Carrie Kazmer is Louis Kazmer's wife and Saybolt's aunt. The evidence indicates that at the time the license was granted the Kazmers were not residents of Pennsylvania, and certainly they could not qualify as applicants for the license because they had not been citizens of this Commonwealth for three years as required by section 402 of the act. Kazmer had held a liquor license in Miami, Florida, and Atlantic City, N. J. About a week or two after the license was granted the Kazmers moved into the licensed premises and have lived there ever since. From the record it is apparent that they promptly took charge of and conducted the

restaurant and taproom. Mrs. Kazmer tended bar and prepared the sandwiches and other food which were sold. About April 1944, Mr. Kazmer, who also served as bartender, had brought some stolen liquor upon the licensed premises, and was arrested and convicted in the Federal court on a charge concerning his unlawful acquisition of the liquor, and was sentenced to the Federal penitentiary. From the record it would appear that Saybolt knew nothing about this incident. In fact the record shows that he was seldom on the licensed premises.

Saybolt entered the employ of the Exide Batteries Company on October 1, 1942, and was still employed there at the time of the hearings. His employment with the said Exide Batteries Company continued during the whole periods covered by the two licenses in question. For a while he lived on the licensed premises but later took up his residence in the 3100 block Almond Street. He never notified the Liquor Control Board that he was employed at, or engaged in, another business; did not secure the approval of the board to engage in another business; and has not spent the major portion of every day on his licensed premises in charge of the business. He testified he went to the licensed premises two or three nights a week. He has never registered his aunt, Mrs. Kazmer, as manager as required in the regulation R43-19B referred to above, nor has he ever registered his said uncle, Louis Kazmer, as manager. There is no doubt that he has not complied with the regulations of the Liquor Control Board.

Saybolt claims that he paid the 31 judgment notes he gave to the Kazmers. These notes were offered in evidence at the trial and each one bears the signature of either Louis Kazmer or Carrie Kazmer under Joseph Saybolt's signature as maker. It was testified by Mr. Dillon in the hearing before the court that the notes were delivered to the Kazmers in his presence at the time of the purchase of the taproom and that at that

time the only maker's signature on the notes was Saybolt's. Saybolt's explanation of this situation was that when he paid the notes one of the payees would sign them under his signature as maker. The notes when paid were not destroyed and there was a question raised at the hearings as to whether or not they were in the possession of the Kazmers at the time of their delayed production in evidence. Mrs. Kazmer has applied to the Liquor Control Board for the transfer of the license to her.

There was other testimony presented before the examiner for the board by George Bortle, who although no longer in the employ of the Liquor Control Board, interviewed Saybolt and Mrs. Kazmer while so employed. He testified Mrs. Kazmer told him that Saybolt was a straw man for her and her husband and it was their intention to apply for the transfer of the license to one of them when they had satisfied the residence requirement of the Liquor Control Act. This was hearsay testimony as contended by appellant and made the main basis of his appeal. But he overlooks the other competent evidence briefly reviewed above which fully justified the board's findings and order.

In this connection it must be borne in mind that "a liquor license, even when granted, is not a property right. It is only a privilege. . . . It may be taken away by the governing authorities without compensation to the holder": Spankard's Liquor License Case, 138 Pa. Superior Ct. 251, 259. As stated in section 3 (a) of the Liquor Control Act, it is "an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth . . ." The objects of the act demand the application of the maxim, salus populi est suprema lex: Beer Co. v. Massachusetts, 97 U. S. 25. The board in assembling the data relating to the application or citation before it in order to properly perform its duties is, of course, not restricted by technical

rules of evidence, but, at the hearing to which an applicant is entitled upon his application for a license or on a citation to revoke a license previously granted him, it is true that all irrelevant and incompetent testimony must be put aside and the findings of the board must rest upon "such relevant and competent evidence of sound, probative character as may be left, be this either circumstantial or direct": McCauley v. Imperial Woolen Co. et al., 261 Pa. 312, 326. Setting aside and disregarding the irrelevant and hearsay testimony we are satisfied that the substantial, relevant, and competent evidence in this case is entirely sufficient and adequate to support the conclusions reached by the Liquor Control Board, and that upon that evidence alone, and disregarding all hearsay testimony, the board was justified in making the findings and entering the order which are the subject of this appeal. The direct testimony clearly shows that Saybolt was employed at a place other than the licensed premises; he was so employed without the consent or approval of the Liquor Control Board; he failed to notify and secure the approval of the board to the appointment of a manager for his licensed premises; and did not spend the major portion of every day on the licensed premises in charge of the business. He thus violated the regulations of the board. The direct and circumstantial evidence and the inference to be reasonably drawn therefrom, would in our opinion be accepted by any reasonable mind as adequate to support the conclusions or findings of the board that in violation of the Pennsylvania Liquor Control Act, Saybolt was not the only person pecuniarily interested in the business of the licensed premises and that he falsified his application for renewals of his license.

As a result of our examination and consideration of the relevant and competent evidence in this case we find the facts to be in accordance with the findings of the board. The order of the board must therefore be

sustained: Elite Social Club License Case, 156 Pa. Superior Ct. 457.

The appeal is therefore dismissed. Costs to be paid by applicant.