# In the Matter of the Goldwyn Distributing Corporation.

*Motion pictures—Censorship—State board of censors—Discretion —Abuse of discretion—Appeal to common pleas—Review—Power of common pleas.*

1. Upon an appeal to the court of common pleas from the decision of the State board of censors of motion pictures declining to approve a motion picture, the sole inquiry is whether the board acted arbitrarily, unreasonably, and in such a way as to amount to an abuse of discretion.

2. The power and authority given to the State board of censors of motion pictures to determine matters brought before them in the exercise of their discretion is not a judicial discretion, but such

discretion as may be expected from persons well qualified by education and experience to act as censors under the act, and therefore their discretion is not to be narrowed by technical and official rules when the exercise involved is one of judicial discretion; nor is it possible to measure that discretion by any fixed standards. What is required is that it must be commensurate with the intelligent understanding by the board of the object and purpose of the law, associated with an honest desire and endeavor on its part to impartially enforce its provisions.

3. Upon an appeal from a decision of State board of censors of motion pictures, the presumption is that the board acted within the reasonable scope of its power and discretion, and it can be called to answer only as the party complaining, upon whom rests the burden of proof, can show that the decision of the board rests on some ground that did not authorize the exercise of discretion.

4. In view of the unqualified right given the board of censors of moving pictures to pass upon the moral effect of pictures upon its own judgment and the utter impracticability of submitting the question to other arbitrament, complainants must show that films or reels submitted are so free from vice and vicious suggestion that whether their public exhibition in the ordinary picture show would have a tendency to debase or corrupt morals, was a question upon which the educated, intelligent, rational, disinterested minds of men and women could not differ, to justify interference on the part of the court with the board's discretionary power, except in cases where the alleged abuse is attributed to perversity of will, passion, prejudice, partiality, or moral delinquency.

5. Although the failure of the board of censors to exercise any discretion whatever is as much an abuse of its power as it is to act contrary to the express duty enjoined, it cannot be said that the board failed to exercise its discretion in a given case merely because it had adopted rules and regulations designating the character of picture that would be excluded, and the picture disapproved by the board was probably such as fell within the condemnation of the rules and regulations, in the absence of evidence warranting an inference that because of the existence of the rules the board declined or failed to give the pictures submitted like scrutiny and examination that they would have received had the rules never been adopted, or that the rules entered into the determination in any way.

6. A judgment of the court of common pleas reversing the State board of motion pictures cannot be sustained where there is no finding of any fact that would support an inference that the board rested its conclusion in the case on any ground not within the scope of its discretion.

Argued May 20, 1919. Appeal, No. 19, Jan. T., 1919, by Pennsylvania State Board of Censors, from judgment of C. P. No. 2, Philadelphia Co., Oct. T., 1919, No. 1389, directing the Board of Censors to approve a motion picture which it had declined to approve in the matter of The Goldwyn Distributing Corporation. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Reversed.

Appeal from decision of State board of censors of moving pictures. Before ROGERS, J.

The court sustained the appeal and directed the board of censors to approve the picture as modified by certain eliminations as agreed to by the appellant. The State board of censors appealed.

*Errors assigned* were the conclusions of law and fact and the order of the court.

*William I. Swope,* Deputy Attorney General, and *William I. Schaffer,* Attorney General, for appellant.—There is no authority under the act in the court of common pleas to substitute its discretion for that of the board of censors and the action of the board of censors cannot be reversed unless the court finds from the facts that the board has acted arbitrarily and oppressively or has maliciously and unreasonably abused its discretion: Franklin Film Mfg. Corp., 253 Pa. 422; Metro Film Exchange v. Penna. State Censors, 27 Dist. 45; Masses Pub. Co. v. Patten, 246 Fed. 24.

*Horace Stern, Morris Wolf* and *G. W. Pepper,* for appellee.

OPINION BY MR. JUSTICE STEWART, June 21, 1919:

The Goldwyn Distributing Corporation, the appellee, submitted to the Pennsylvania State Board of Censors for examination and censorship a series of reels prepared

with a view to their being employed in the production of public exhibitions of moving pictures within this State, these pictures being intended to illustrate incidents narrated in a recent work of fiction entitled "The Brand," the theatre of action there being Alaska. After examination and study of the reels the board of censors recorded its disapproval of the same in the following language: "They further certify that said reels tend, in the judgment of the said Board of Censors, to debase or corrupt the morals and are therefore not approved." At the request of the distributing corporation the board of censors gave several rehearings or reviews in the matter of the application for approval without any change in the result reached on the first hearing. From the order of the board declining its approval of the reels appeal was taken, with leave, to the Common Pleas Court of Philadelphia, the distributing corporation alleging as the ground of its appeal (1) "that the films constituting said motion picture play, 'The Brand,' are moral and proper, (2) that the board of censors 'was guilty of arbitrary and oppressive abuse of discretion in disapproving the said films.'" Replying to the rule issued to show cause why the appeal should not be allowed, the board denied these several averments and alleged that the motion picture play offends against Section 6 of May 15, 1915, P. L. 534, and certain standards of the board of censors adopted in pursuance thereof, with particular reference to the following: "(11) Scenes showing men and women living together without marriage, and in adultery, will be disapproved." (23) "Themes or incidents in picture stories, which are designed to inflame the mind to improper adventures, or to establish false standards of conduct, coming under the foregoing classes, or of other kinds, will be disapproved. Pictures will be judged as a whole, with a view to the total effect; those betraying evil in any form which may be easily remembered or emulated will be disapproved." The answer concludes with the following averment, "Respondents aver that they gave two reviews

of the motion picture play, 'The Brand,' the first on the
27th of February, 1919, the second on the 3d of March,
1919, and condemned the improper play because it is
the story of a woman who leaves her husband (an older
person) for an earlier lover and lives with him for two
years without marriage.   After leaving her husband the
woman has a child of doubtful parentage.   The paramour
at the end is branded by the woman's husband as a se-
ducer."   The petition and answer constitute the entire
pleadings in the case and upon these the court proceeded
to hear the proofs and pass on the merits, not, however,
confining the inquiry to the single issue derivable from
the pleadings—the alleged abuse of the discretion con-
fided by the legislature to the board of censors,—but so
extending the inquiry as to inform the mind and con-
science of the court with regard to the tendency of the
prepared exhibit of the pictures as to qualify it to pass
judgment upon the action of the board in that particular.
The giving of the private exhibition of the pictures under
the circumstances here presented could have been for no
other purpose and to no other end.   In Franklin Film
Manufacturing Corporation, 253 Pa. 422, we said: "At
the present time, in our law, the word 'appeal' has no
conclusive meaning, for, since the Act of May 9, 1889,
P. L. 158, a writ of error and a certiorari, as well as an
appeal proper, are all designated 'appeals'; therefore, it
is necessary in each instance to look at the particular
act of assembly giving the right of appeal to determine
just what powers are to be exercised by the appellate
court.   In this connection, a careful reading of the stat-
ute here in question convinces us it was never contem-
plated that the courts of common pleas were to be con-
stantly called upon to permit moving picture reels to be
reproduced before them, and sit as supercensors thereof,
in order to review the decisions of the administrative
body created by the act.   The evident intent was to grant
the right of appeal to the common pleas, so that tribunal
could correct any arbitrary or oppressive orders which

the board of censors might make, and nothing more; in other words, that the court might reverse the censors when the latter were guilty of an abuse of discretion. This is the ordinary rule to which, on appeal, even this court restricts itself in reviewing an exercise of discretion, particularly of administrative officials." There can be no pretense that the ordinary methods of proof were here inadequate in view of the one issue that was to be tried. The court had before it the admission of the board that the individual pictures, separately regarded, were not obscene, and, judged separately, did not offend morality; but the purpose of the owner or proprietor being to exhibit them as a series and connected whole, illustrating the narrative, without which they would be unmeaning, the board rested its disapproval of the series as having a tendency to debase or corrupt the morals if exposed to public exhibition. We think that it clearly appears in the opinion of the court that the effect of the introduction of this evidence was to raise a false issue and lead the mind away from the one issue which was, as we have stated, did the board, in disallowing the exhibition of the pictures for the reason assigned, act arbitrarily, unreasonably, and in such a way as to abuse the discretion committed to it?

The several provisions of the governing act, Act of 15 May, 1915, which it is here important to observe, read as follows: Section 3 relates to the constitution of the board of censors, and thus reads, "The board shall consist of three residents and citizens of Pennsylvania, two males and one female, well qualified by education and experience to act as censors under this act. One male member of the board shall be chairman, the female member shall be vice-chairman, and one male member shall be secretary. They shall be appointed by the Governor, for terms of three years," etc. The duties, powers, and prerogatives of the board are prescribed and defined in section 6, which reads as follows: "Sec. 6. The board shall examine or supervise the examinations of all films, reels,

or views to be exhibited or used in Pennsylvania; and shall approve such films, reels, or views which are moral and proper; and shall disapprove such as are sacrilegious, obscene, indecent, or immoral, or such as tend, in the judgment of the board, to debase or corrupt morals." Section 26 prescribes procedure and reads: "If any elimination or disapproval of a film, reel, or view is ordered by the board, the person submitting such film, reel, or view for examination will receive immediate notice of such elimination or disapproval, and, if appealed from, such film, reel, or view will be promptly reëxamined, in the presence of such person, by two or more members of the board, and the same finally approved or disapproved promptly after such reëxamination, with the right of appeal from the decision of the board to the court of common pleas of the proper county."

We derive from the first of these provisions above quoted that the board of censors is not a court of law for the administration of justice judicially, upon pleading and evidence to be adduced under well defined and established rules according to settled principles of law. That the members of the board should be learned in the science of the law is not made a qualification of their appointment; therefore, the power and authority given the board to determine the matters properly brought before them in the exercise of their discretion is not to be understood judicial discretion, but such discretion as may be expected from persons well qualified by education and experience to act as censors under the act, that is to say, persons with education and experience sufficient to enable them to understand the purpose and object of the particular legislation with which they have to deal and its several provisions, and for them to know what are the common standards of morality which the act seeks to protect, and to act intelligently when it becomes their duty to discriminate fairly between pictorial exhibitions which are consonant with the established canons of morality and such as tend to lower and degrade such stand-

ards. It follows that the discretion here committed to the board of censors is not to be narrowed by technical and official rules when the exercise involved is one of judicial discretion; nor is it possible to measure that discretion by any fixed standards. What is required is that it must be commensurate with the intelligent understanding by the board of the object and purpose of the law, associated with an honest desire and endeavor on its part to impartially enforce its provisions. The only question raised on this appeal was whether the board of censors, in disallowing the reels and films submitted, had exercised an honest discretion or had unreasonably and arbitrarily rejected them. If the latter, it was an abuse of the discretion with which the board was by law invested. Where such inquiry arises the investigation starts with the presumption that the tribunal making the order or decree appealed from acted within the reasonable scope of its power and discretion, and it can be called to answer only as the party complaining, upon whom rests the burden, can show that the decision of the board rests on some ground that did not authorize the exercise of discretion. Such is the general rule when the exercise of discretionary power is complained of. "The rule that a discretionary ruling is not reviewable on appeal does not apply where the decision complained of was not made in the exercise of discretion, but was based upon a question of power in the court below, or upon some ground of law not involving discretion. It follows that a decision is not unappealable as being discretionary where it was not made in the exercise of discretion, but was the result of the refusal to exercise discretion. In such cases, although there have been decisions to the contrary under particular statutes, the general rule is that the onus is upon the appellant to show affirmatively that the decision was made on a ground not involving the exercise of discretion": Corpus Juris, volume 3, p. 471, sec. 289. The authorities cited

in the note to the text show how widely and generally this rule is recognized and adapted.

This brings us to the consideration of the specific complaint here made, namely, that the determination of the board in disallowing the right of the proprietors of the pictures to make a public exhibition of them as moving pictures was an abuse of discretion allowed it by the act under which the board was created; that it was purely an arbitrary determination unsupported by reason or judgment. Somewhat differently expressed, but containing neither more nor less than is necessarily implied in this complaint, as we have above stated it, is the contention of the proprietors of the films or reels submitted that they are so free from vice and vicious suggestion that whether their public exhibition in the ordinary picture show would have a tendency to debase or corrupt morals was a question upon which the educated, intelligent, rational, disinterested minds of men and women could not differ, and that universal approval of the pictures would follow the submission, were such a thing practicable, of any such question. In view of the unqualified right given the board to determine such question upon its own judgment and the utter impracticability of submitting it to other arbitrament, to the extent indicated must the complainant's proof reach to justify interference on the part of the court with the board's discretionary power, except in cases where the alleged abuse is attributed to perversity of will, passion, prejudice, partiality, or moral delinquency; where such is the case, a very different rule obviously obtains. The difficulty of obtaining such high degree of approval as would then be required is nothing to the purpose, except as it reflects light on the legislature's purpose in committing so much to the judgment of the board. How can it be affirmed with any assurance of correctness that there would be even an approximate approval of these pictures on the ground that they would not tend to debase or corrupt morals? Whatever the individual opinion with respect

to it, it would rest largely upon inference from the known and established ideals and standards which are observed in our own State, not in Alaska.  As a people, we have recognized certain lines of individual conduct in civil life as moral and virtuous.  Their opposites we have condemned as immoral and vicious.  Upon this distinction our civilization rests, and it becomes the highest duty of the legislature to guard and protect it from impairment. It will serve our purpose if we indicate one of these lines of conduct; others will readily occur to the most casual reader.  We refer to that line of conduct that pays highest deference and respect to the sanctity and purity of the home and family relation between husband and wife, upon which the home rests.  To say of a series of pictures intended for public exhibition to promiscuous audiences or spectators composed largely of the youth of both sexes, which offers for its salient attraction, and to which all others are merely incidental and subordinate, the depicting of the adulterous relation, long continued, between a libertine and an immoral married woman, the legal wife of another, with no moral to be derived therefrom other than that the man who debauched the wife of another in this way runs the risk, if the wronged husband happens to be the stronger, of having his brow scarred with a knife in a way that its significance can only be understood by the parties to the occurrence, would not encounter serious opposition on the ground that its tendency would be to debase public morals, would be to reduce to a negative quantity the healthful moral influence exerted upon community life by faithful observance of the recognized moral standards.  Whatever may have been the decline, if any, in the public observance of established moral standards, we are not yet prepared to accept any such conclusion.

We return to the question of the exercise of the board's discretion in this particular case.  An ingenious defense by counsel who addressed us in support of appellee's contention, to the effect that when the board has failed to

exercise any discretion whatever, it is quite as much an abuse of its power as it would have been for it to act contrary to the express duty enjoined. So much may be granted. The argument here is that the fact being in evidence that the board had adopted certain fixed rules and regulations by which it had been determined in advance that pictures dealing with certain defined exhibitions, among others, "pictures showing men and women living together without marriage, and in adultery," would be disapproved; another that "themes or incidents in picture stories which are designed to influence the mind to improper adventures, or to establish false standards of conduct, coming under the foregoing classes, or of other kinds, will be disapproved. Pictures will be judged as a whole with a view to their total effect; those betraying evil in any form which may be easily remembered or emulated will be disapproved." Whatever may be said as to the propriety or expediency of adopting the rules in question for the regulation of the board, it is enough to know that there is not a particle of evidence in the case warranting an inference that, because of the existence of the rules, the board declined or failed to give the pictures submitted like scrutiny and examination they would have received had the rules never been adopted, or that the rules entered into the determination in any way. Aside from this, we see no reason why a board in its discretion may not classify certain topics and themes as things prohibited because, in their judgment, a public exhibition of pictures illustrative of such would tend to corrupt public morals. There are many such exhibitions and themes; too many to make it necessary here to suggest or specialize for illustration. In classifying such and placing them under condemnation, the board is exercising its judgment, hence its discretion, and its action in so doing becomes reviewable by the common pleas court only for like reason as would give the court jurisdiction in cases of the rejection or disallowance of a single series illustrating a single subject, the burden of

the complaining party in either case being the same, to show by satisfactory proof, that is to say, convincing proof, that the board had rested its decision on ground that was expressly or impliedly excepted from its discretion.

The view that prevailed with the court and on which it based its action we learn from the following paragraph appearing in the opinion filed in the case: "The question ought not to be whether the pictures seem immoral to people of extraordinary or abnormal temperament, but whether it would be considered so by ordinary people. The present picture is not in itself indecent, vulgar, or suggestive; it does not lead to an immoral conclusion such as that the doing of wrong is laudable or that it does not bring its own punishment. It is a series of pictures of historical and educational value dealing with this particular territory of the United States." We have but a single comment to make: this is not a finding of any fact that would support an inference that the board rested its conclusion in the case on any ground not within the scope of its discretion. Our effort has been to show that on no other ground could a reversal of the order of the board of censors in this case be justified. For the reasons we have given the decree of the court in this case is reversed at the cost of the appellees, and the order upon the board of censors to approve the motion pictures, as modified by the elimination created, is annulled.